THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD BRYAN, Defendant-Appellant.

First District (1st Division)   No. 85—1335

Opinion filed July 27, 1987.

48

James J. Doherty, Public Defender, of Chicago (Karen E. Tietz, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Sharon L. Gaull, and John A. Gasiorowski, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant Richard Bryan was found guilty of armed robbery following a jury trial and sentenced to 30 years in the Illinois Department of Corrections. On appeal, he raises the following issues: (1) whether the trial court erred in admitting certain evidence of other crimes; (2) whether defendant was denied a fair jury trial as a result of the prosecutor's comment on his lack of an alibi to rebut the other crimes evidence; (3) whether defendant was denied a fair trial because the trial court allowed the prosecution to cross-examine a defense wit-

ness about the defendant's use of an assumed name; (4) whether defendant was prejudiced by an overbroad other crimes instruction to the jury; and (5) whether the trial court abused its discretion in imposing a maximum sentence. We affirm.

On January 30, 1980, defendant was arrested and charged with the armed robbery of Jackylan Cook. Prior to the trial, defendant objected to the admission of other crimes evidence showing that the defendant had committed a previous armed robbery against Jackylan Cook on January 25, 1980, and that he had committed an armed robbery against Adrian and Robert Poproch on January 18, 1980. The court overruled the objection and held that the other crimes evidence was admissible to show a common scheme, design or pattern.

At trial, Jackylan Cook testified that at 6:25 p.m. on January 30, 1980, she got off the bus at 87th and Colfax and walked south along the east side of Colfax towards her home. She was carrying a dark leather purse over her arm. She saw a man approach two girls who were also walking south on Colfax but on the west side of the street. About one-fourth of the way down the block, he crossed the street and walked in her direction. She saw his face under a street light as he approached and also observed that he was wearing a dark blue hooded parka, a knit cap which came to the middle of his forehead and dark shoes and pants. As he got within 10 feet of Cook, he put his hand into his pocket and tried to hold his jacket over his face. The man, whom Cook later identified as the defendant, then pointed a black gun at her and said "Give it up." Cook held her arm out and defendant took her purse which contained makeup and gum. Cook recognized the defendant as the man who had robbed her and taken her purse on January 25, 1980. After taking her purse, he went north on Colfax in the direction of the churchyard where he had robbed her on January 25.

Cook then ran south on Colfax toward her home. She saw a police car, flagged it down and told the officer about the robbery. She described her assailant and told the officer that it was the same person who had robbed her the previous week.

Later that evening, Cook went to the fourth district police station where she viewed a five-man lineup. She identified defendant as the man who had robbed her on both January 25 and January 30. During the lineup, the men were asked to say "stop" and "hold it." Cook also recognized defendant's voice from the robberies of January 25 and January 30.

Regarding the January 25 robbery, Cook testified that at 6:40 p.m. she got off the bus at 87th and Colfax and was walking south on

the west side of the street. A man whom she identified as the defendant came out of the shadows by a church and said "[S]top, hold it right there." She described him as being 5 feet 8 inches to 5 feet 10 inches, 150 to 170 pounds, light complected, with bushy arched eyebrows and a long nose. He was wearing a dark parka, dark pants and dark shoes. He was holding the flap of his jacket over his face with one hand and with the other he was holding a black gun, which she stated looked similar to the gun she saw on January 30. Her assailant told her to drop her bag and then reached into her pocket. He then told her to start walking.

Adrian Poproch testified that at 7 a.m. on January 18, 1980, she and her husband Robert left their home at 8705 Colfax to go to work. She was walking 15 feet behind her husband when she was approached from behind by a man she identified as the defendant. The man wore a knit hat and had a dark gun in his right hand. Adrian threw her purse to the ground. As her husband came toward her, the man ordered him to "let it go" and Robert dropped his wallet to the ground. The man then ordered the Poproches to lie face down on the street, picked up the purse and wallet and went west towards Kingston Street.

Police Officer Kenneth Wallace testified that on January 30, 1980, at 6:25 p.m. he responded to a robbery call at 87th and Colfax. An unidentified woman gave him a description of an individual running across a church schoolyard and told him that the man had robbed her. Officer Wallace saw the assailant, who was described as wearing a blue jacket and blue jeans, 5 feet 7 inches to 5 feet 9 inches, weighing 150 to 170 pounds, in a fenced school churchyard adjacent to 87th and Colfax. The officer went into the schoolyard and saw a single set of footprints and a brown purse.

Along with other officers who had arrived at the scene, Officer Wallace followed the footprints to the basement door of a house at 8731 Essex. He stood by the front door while Officer James Funches and Detective George Basile went into the premises through the rear door. Officer Wallace's testimony was corroborated by Officer Funches.

Detective Basile testified that after following the footprints in the snow to the rear door of 8731 Essex, he knocked on the door. When no one answered, he went inside with several other officers. On the wooden steps leading up from the basement, the officers saw wet footprints. The officers went upstairs, where they found five black males, one of whom was the defendant. All of the men were cold to the touch, had wet pant leg bottoms and wore blue jeans. A blue

parka was on the coffee table in the front room.

Defendant's mother, Delores Bryan, testified that on January 18, 1980, and January 30, 1980, she and the defendant went to the William Dawson Skill Center School between 6:15 and 6:30 a.m. She also testified that on January 30, defendant arrived home from school at approximately 4:30 p.m. and remained in the house until he was arrested at approximately 7 p.m.

On appeal, defendant does not challenge the admissibility of other crimes evidence from complainant Jackylan Cook but he contends that the admission of Adrian Poproch's testimony as other crimes evidence was error in that it had the impermissible effect of showing that he had a propensity to commit crime. The State maintains that Adrian Poproch's testimony was properly admissible to show both defendant's identity and a common scheme or design.

■ Evidence of crimes other than the one for which defendant is being tried is generally not admissible because it tends to be unfairly prejudicial. (*People v. Romero* (1977), 66 Ill. 2d 325, 330, 362 N.E.2d 288.) Exceptions exist where the evidence of other crimes shows motive, intent, identity, preparation, common scheme or design, absence of mistake or *modus operandi*. See, *e.g., People v. Alexander* (1982), 93 Ill. 2d 73, 79, 442 N.E.2d 887; *People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489.

It appears that in using the term "common scheme or design" in the case at bar, the trial court in fact was referring to the *modus operandi* of the perpetrator. Although Illinois courts have tended to use the terms "common scheme or design" and *"modus operandi"* interchangeably, they are not synonymous. (*People v. Barbour* (1982), 106 Ill. App. 3d 993, 999-1000, 436 N.E.2d 667, *appeal denied* (1982), 91 Ill. 2d 572.) *Modus operandi* refers to crimes that are so nearly identical in method that they are clearly the work of the accused. Common design, like *modus operandi*, may also be probative of the identity of the actor; however, common design refers to a larger criminal scheme of which the crime charged is only a portion. (See generally McCormick, Evidence sec. 190, at 559 (3d ed. 1984).) While common design is not at issue here, we believe that the *modus operandi* exception is applicable.

■ Many courts have held that evidence of other crimes is admissible to show *modus operandi* only if the manner in which the crime has been perpetrated is so distinctive as to amount to a "signature" (see McCormick, Evidence sec. 190(3), at 559 (3d ed. 1984) (and cases cited therein)); Illinois courts have adopted less stringent requirements. Other crimes evidence has been found admissible where the

other offense is substantially similar and has common features with the offense charged; the crimes need not be identical. *People v. Taylor* (1984), 101 Ill. 2d 508, 521, 463 N.E.2d 705, *cert. denied* (1984), 469 U.S. 866, 83 L. Ed. 2d 140, 105 S. Ct. 209.

Here there are a number of substantial similarities between the three robberies in that they all took place on the same block within the same 12-day period. In each case the defendant used the same type of gun, wore the same clothes, gave similar commands, worked alone, attempted to hide his identity, escaped in the same direction and approached women who were initially alone. These similarities tended to establish the defendant's placement near the scene of the crime, his intent to commit armed robbery and his identity as Jackylan Cook's assailant.

■ Other crimes evidence is also admissible to show identity provided that the probative value of the evidence outweighs its prejudicial effect. (*People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489; *People v. Houseton* (1986), 141 Ill. App. 3d 987, 991, 490 N.E.2d 1354.) Here, defendant Bryan put his identity into issue by challenging the accuracy of Jackylan Cook's description of her assailant to the police and by presenting the alibi testimony of his mother to the effect that she was with him on the morning of January 18 and that he was at home the afternoon of January 30.

■ Both Adrian Poproch and Jackylan Cook identified defendant as their assailant and both Robert Poproch and Jackylan Cook gave similar descriptions of the defendant. Under these circumstances, we believe that the other crimes evidence of Adrian Poproch was properly admitted for the purpose of establishing defendant's identity and *modus operandi*.

Defendant next argues that the trial court erred in allowing the prosecutor to comment on his lack of an alibi to rebut the other crimes evidence offered by Jackylan Cook regarding the robbery on January 25. The State maintains that the comment was proper not only in light of the fact that the defendant offered alibis for the instant offense and the January 18 robbery of the Poproches but also based on the other evidence presented at trial. The State also asserts that the comment was proper as invited reply to defendant's own closing argument.

In her closing argument, defendant's attorney referred to Delores Bryan's testimony that defendant was in school on January 18 and January 30 and stated that Mrs. Bryan had told the assistant State's Attorney that the school kept attendance records. Objection to the argument was sustained on the basis that there was nothing in evidence

regarding school records. In his rebuttal argument, the assistant State's Attorney commented on the fact that the defense had not brought in any school records to prove the alibi. Defense counsel objected and the judge told the jury to disregard the remark. The State's Attorney then went on to comment regarding the incident of January 25 that Mrs. Bryan had offered no alibi for January 25, 1980, because Richard Bryan was robbing Jackie Cook at 6:30 that evening.

■■ ■ A prosecutor is allowed great latitude in making a closing argument and has a right to comment on the evidence and draw from it any legitimate inferences irrespective of whether they are unfavorable to the defendant. (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 322, 379 N.E.2d 847.) In our opinion, defense counsel invited the challenge to defendant's alibi when she argued that Delores Bryan was a credible witness and that the alibi evidence was persuasive. Mrs. Bryan did not offer an alibi for January 25, 1980, and the State's comment was a reasonable inference based on Jackylan Cook's testimony at trial. We therefore find that the prosecutor's comments were not improper.

We next consider defendant's argument that he was denied a fair trial because the trial court allowed the prosecution to cross-examine a defense witness about defendant's use of an assumed name. During cross-examination, over objection, defendant's mother was allowed to testify that defendant sometimes used the name Oliver Hamb. In his rebuttal argument, the assistant State's Attorney also stated that Jackylan Cook identified "Richard Bryan, or Hamby, or whatever his name is" as the man who robbed her with a gun. No objection was made to the second reference.

Defendant contends that since his use of an assumed name was not relevant to the issues in this case, the trial court committed reversible error in allowing this testimony. The State concedes that the question was improper but argues that the error was harmless in light of the fact that only two references to an assumed name were made and the evidence of his guilt was overwhelming. We agree.

■■ A defendant may be questioned regarding his use of assumed names only if proof of the assumed names is offered into evidence and it is shown to be material and admissible. (*People v. Singer* (1919), 288 Ill. 113, 121, 121 N.E.2d 327.) Where evidence regarding assumed names is brought out solely to raise inferences of prior criminal activity it is highly prejudicial and therefore inadmissible. See *People v. Pumphrey* (1977), 51 Ill. App. 3d 94, 99, 366 N.E.2d 433.

Defendant relies on *People v. Pumphrey* (1977), 51 Ill. App. 3d 94, 366 N.E.2d 433, in which the appellate court reversed a conviction of

armed robbery as a consequence of repeated attempts by the State's Attorney to impeach a defendant and his wife through questions regarding their use of various aliases on specific dates. The reversal was also based on the fact that trial court rulings on defense objections were inconsistent and that the State never proved that defendant's wife had ever used other names and thus failed to perfect its impeachment of her testimony.

■■ In the case at bar, the error does not approach the magnitude of the error in *Pumphrey*. The reference to defendant's use of another name was limited to one question on cross-examination and one statement during rebuttal. Unlike *Pumphrey*, there is nothing here to suggest that the jury's verdict was based on the two brief references to defendant's use of an assumed name rather than on the evidence presented at trial. We therefore find that the references to defendant Bryan's assumed name did not constitute reversible error. See *People v. Radford* (1978), 65 Ill. App. 3d 107, 112-13, 382 N.E.2d 486, *appeal denied* (1979), 72 Ill. 2d 584; *People v. Finley* (1978), 63 Ill. App. 3d 95, 101, 379 N.E.2d 645.

The fourth issue raised by defendant pertains to whether the trial court erred in issuing an overbroad limiting instruction to the jury regarding the evidence of other crimes.

Immediately after the other crimes evidence was presented, the court instructed the jury that the evidence was admissible only "to prove identity, to show a common scheme, design, or pattern" and not to show that defendant had a propensity to commit crime. The court then stated that the evidence was to be considered "on the issue of identity and what we call *modus operandi*, or common motive and intent." At the close of the evidence, the court gave Illinois Pattern Jury Instruction (IPI), Criminal, No. 3.14 (2d ed. 1981), which as modified stated:

> "Evidence has been received that the defendant has been involved in crimes other than that charged in the information. This evidence has been received solely on the issue of the defendant's identification, common scheme, and design. This evidence is to be considered by you only for the limited purpose for which it was received."

Defendant contends that the instruction itself was error in that the evidence of a common scheme and design was not at issue in the instant case and that the trial court's subsequent limiting instruction was overbroad and resulted in confusing the jury.

The State responds that defendant has waived the issue by failing to object to the instruction at trial and failing to allege that it consti-

tuted error in his motion for a new trial and that even if we were to consider the error as not waived under the plain error rule (87 Ill. 2d R. 615(a)), the instructions were proper as the other crimes evidence was relevant for the limited purpose of proving identity and common scheme or design.

■ We agree with the defendant that a common scheme or design was not at issue here; however, we find that the alleged error does not warrant reversal. Defendant's guilt was established beyond a reasonable doubt by the testimony of Jackylan Cook and Adrian Poproch and by the other evidence presented at trial. We do not believe that retention of the words "common scheme or design" in the jury instructions had any influence on the outcome of the trial and we therefore decline to reverse on this ground. See *People v. Alexander* (1984), 127 Ill. App. 3d 1007, 1017, 470 N.E.2d 1071, *cert. denied* (1985), 471 U.S. 1019, 85 L. Ed. 2d 308, 105 S. Ct. 2027; *People v. Weathers* (1974), 23 Ill. App. 3d 907, 912-13, 320 N.E.2d 442, *rev'd on other grounds* (1975), 62 Ill. 2d 114, 388 N.E.2d 880.

The final issue raised by defendant is that the court erred in sentencing him to a maximum term of 30 years for the armed robbery conviction pursuant to section 5—8—1(a)(3) of the Uniform Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(3)). In aggravation it was shown that defendant had been convicted of three prior felonies. Based on the prior convictions and the two pending armed robbery charges, the prosecutor asked the court to impose an extended-term sentence. Although nothing was offered in mitigation, the court stated that based on defendant's age he would not consider the maximum sentence of 30 years for armed robbery. The court then proceeded to impose a 30-year sentence.

Defendant's argument is that the court mistakenly believed that defendant could have been sentenced under the extended-term provision of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(1)) and therefore it erred in sentencing him to the maximum term of 30 years. The State relies on *People v. Rush* (1980), 91 Ill. App. 3d 366, 370-71, 414 N.E.2d 899, *appeal denied* (1981), 83 Ill. 2d 573, in which the appellate court held that it was not error for the court to impose a maximum sentence for armed robbery despite the fact that the court was under the mistaken impression that the defendant was eligible for an extended term.

■ As did the court in *Rush*, we find that the trial court did not err in imposing the maximum sentence for armed robbery. There is nothing in the record to indicate that the trial court was influenced by anything other than the factors presented in aggravation and mitiga-

56

tion. The only factor considered in mitigation was defendant's age. Based on the fact that his conduct threatened serious harm and that he had a substantial history of criminal activity, the court was within its discretion in sentencing defendant to the maximum term.

The decision of the circuit court of Cook County is affirmed.

Additionally, pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, and *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319, we assess defendant $75 in costs for the State's defense of the instant appeal and hereby incorporate it as part of this judgment.

Judgment affirmed.

CAMPBELL and BUCKLEY, JJ., concur.