THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RANDY W. CONNOLLY, Defendant-Appellant.
Fourth District   No. 4—88—0597

Opinion filed July 27, 1989.

430

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

Alan D. Tucker, State's Attorney, of Havana (Kenneth R. Boyle, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On July 7, 1988, following a jury trial in the circuit court of Mason County, defendant Randy W. Connolly was convicted of burglary and felony theft. He was subsequently sentenced to concurrent extended terms of 14 years' imprisonment for burglary and 10 years for theft.

On appeal, defendant maintains (1) the trial court erred in allowing evidence of defendant's previous offenses of burglary and attempt (burglary) to prove his guilt of burglary and theft here; (2) he was denied his sixth amendment right to confront witnesses against him by the State's introduction of a hearsay statement made by a nontestifying codefendant; (3) he was denied his right to a fair trial by the introduction of a plea-related discussion in violation of Supreme Court Rule 402(f) (107 Ill. 2d R. 402(f)); (4) he was denied his right to a fair trial by the State's characterization of its case as undisputed and uncontradicted and thus focusing the jury's attention on defendant's failure to testify; (5) the court erred in considering the proceeds received by the defendant as a factor in aggravation; (6) his extended-term sentence for theft violated the provisions of section 5—8—2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2(a)); and (7) the trial court erred in failing to advise the defendant of the possibility of treatment under the Alcoholism and Substance Abuse Act (Act) (Ill. Rev. Stat. 1987, ch. 111½, par. 6301 et seq.). We reverse and remand for further proceedings.

Daniel Rohlfs testified at trial that he had entered a plea of guilty and was to receive a sentence of 4½ years' imprisonment for burglarizing a jewelry store in Havana, Illinois, on March 12, 1988. He stated that on that date, he was approached by defendant and Mark Basden and was asked if he wanted to "make some money." He said he did, and they all drove from Springfield to Havana to look for a jewelry store to burglarize. Rohlfs testified (1) defendant and Basden were dressed in dark winter clothing and told Rohlfs to dress "warmly"; (2) defendant and Basden had various tools in the car and instructed Rohlfs to gather them into boxes; (3) when they found a jewelry store, the three men went to the back of the building to look for an alarm

system; (4) defendant cut some of the wires leading to the jewelry store; (5) they were returning to the store, when a police car appeared, and they all "took off" running; (6) they then drove "aimlessly" around town and eventually returned to the store after the police had departed. Rohlfs said that defendant and Basden then instructed him to cut a hole in the roof of the jewelry store with an axe, drop into the store, grab all of the men's rings and then open the back door for Basden and defendant. Rohlfs said it took him almost three hours to cut through, and when he later went to look for defendant and Basden, he could not find them anywhere in town. He said he then hid the jewelry he had taken and called defendant at his apartment in Springfield to come to Havana to get him. Rohlfs said he gave some of the jewelry to Basden and defendant, and they later split the proceeds from the sale of that jewelry. Rohlfs admitted that he had two previous burglary convictions. He also admitted that he had previously told the police that he cut the wires near the store, but he said he was initially reluctant to tell the police of defendant's involvement. His testimony was corroborated in part by telephone bills showing collect calls from Havana to defendant's apartment on March 13, 1988, by testimony of people who overheard the telephone calls, by a person who witnessed Rohlfs and defendant retrieving a box from where Rohlfs said he had hidden some of the jewelry and by testimony of two police officers.

Police officers Kevin Noble and Rod Boggs testified at trial that they were officers of the Havana police department and that they answered a "silent alarm" coming from Walker's Jewelry Store at 10 p.m. on March 12, 1988. Noble said he saw no sign of forced entry and nothing out of the ordinary. He also said that he later saw defendant and Basden in Havana in the early morning hours of March 13.

Boggs testified he had seen the two men in the company of a third, unidentified man at a time when Rohlfs claimed the three of them were driving around waiting for the police to leave the jewelry store. He also testified that he later saw the car with two men sleeping inside. He said defendant produced a valid driver's license and indicated he and his friend were traveling from Peoria to Springfield and stopped there to rest. Boggs said he did not detect any signs of alcoholic intoxication, and there were no alcoholic beverages or tools in the car. He said he then directed defendant to go to the nearest motel or to leave town.

Officer Leland Keith, of the Mason County sheriff's office, testified that he arrested defendant on March 25, 1988, and defendant ac-

knowledged that he had been in Havana on the night in question. He said he and Basden had been in Peoria, were drunk, and he did not commit any burglary. Keith said defendant then inquired as to whether they made "deals" in Keith's county. The officer then testified over objection to a statement taken from Mark Basden six days prior to his death on March 18, 1988. In that statement, Basden also indicated he and defendant had been in Peoria, were drunk, and were returning to Springfield. Basden also said he and defendant had been asleep when the police approached their car and told them to get out of town. Basden denied participating in the burglary of the jewelry store and said he knew nothing about it.

John Cook, a detective in the Logan County sheriff's department, then testified over defense objection that he had investigated a burglary of a grain elevator in Chestnut, Illinois, in the early morning hours of April 18, 1985. He said (1) someone had broken into the elevator building by prying a basement door and had cut wires to a loudspeaker positioned outside the building; (2) defendant was seen driving a car in the vicinity of the elevator at the approximate time of the burglary wearing a navy blue, hooded sweatshirt; (3) he searched defendant's car and found a three-way lug wrench, a pry bar, screwdrivers, pliers, and a wire connector; and (4) his investigation revealed defendant was responsible for the burglary.

Sergeant Frank Natale of the Springfield police department testified that he investigated an attempt (burglary) at a grocery store in Springfield in the early morning hours of December 4, 1985. Natale testified (1) an alarm was triggered when wires near the roof of the store were severed; (2) the back door to the store bore fresh pry marks; (3) near the time the alarm sounded, police observed a man driving away in a car registered to defendant's wife; (4) defendant was apprehended, on foot, near the store with wire cutters; (5) defendant was wearing a dark blue stocking cap, tan coat, Levis, and gloves; and (6) the officer's investigation revealed defendant was responsible for the attempt (burglary).

At the close of trial, the jury was instructed that the other crimes evidence could be considered "solely on the issue of the defendant's *modus operandi*, intent, knowledge, and presence."

■ Defendant argues the trial court erred in admitting the evidence of prior offenses, because such evidence is irrelevant for any purpose other than to show defendant's propensity to commit crime. Evidence of other crimes is not admissible for such purposes (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489), although it is admissible to prove motive, opportunity, intent, preparation, plan, or ab-

sence of mistake or accident and to show *modus operandi*. M. Graham, Cleary & Graham's Handbook of Illinois Evidence §404.5, at 163-65 (4th ed. 1984).

If, as here, evidence of other crimes is admitted to prove *modus operandi*, there must be some clear connection between the other crime and the crime charged such that it creates a logical inference that if defendant committed one of the acts, he may have committed the other act. (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 485 N.E.2d 1292.) The similarities between the offenses cannot be features which are common to most such offenses (*People v. Tate* (1981), 87 Ill. 2d 134, 429 N.E.2d 470), but both crimes must share peculiar and distinctive common features so as to earmark both crimes as the handiwork of the defendant. Nevertheless, it is not necessary that the crimes be identical for the other crime to be admitted in evidence to prove *modus operandi. Kimbrough*, 138 Ill. App. 3d at 487, 485 N.E.2d at 1297.

For example, in *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489, the defendant was convicted of a burglary during which a female occupant of the residence was attacked. The court held the State properly introduced evidence of a similar burglary where the same defendant had also gained entrance in the early morning hours by removing a screen and standing on a refuse basket. The defendant then made a similar attack on a woman sleeping in the residence. In *People v. Burgin* (1979), 74 Ill. App. 3d 58, 392 N.E.2d 251, the court affirmed a rape conviction and held that evidence of a similar rape committed by the defendant had been properly admitted to show *modus operandi*. Evidence was presented that, in both cases, the rapes were committed on the same college campus, within a few blocks of each other, on Saturday evenings. The rapist, in both cases, had been riding a bicycle, approached the victim using vulgar language, and dragged her into a dark place.

■ While here, the evidence indicated each of the burglaries involved a forced entry into a commercial establishment in the early morning hours, and each involved attempts to disable alarm systems, we cannot say these characteristics were "so unusual and distinctive as to be like a signature." (E. Cleary, McCormick on Evidence §190, at 560 (3d ed. 1984).) Rather, those characteristics are common to a great number of burglaries. The evidence of other crimes to show *modus operandi* was thus unduly prejudicial despite the court's limiting instruction.

In addition, the evidence of other burglaries, committed three years prior to the instant offense, was not relevant to disprove

defendant's claim that his presence in Havana was innocent. Nor does such evidence bear upon defendant's intent or knowledge. Other crimes evidence is admissible only to prove intent, knowledge, or presence if it is closely related to the crime charged in point of time, place, and circumstance. (*People v. Sigman* (1976), 42 Ill. App. 3d 624, 633, 356 N.E.2d 400, 406.) The evidence was thus irrelevant for any purpose for which the jury was instructed to consider it, and the jury would likely consider it only to show a propensity on the part of the defendant to commit burglaries. For this reason alone, we must reverse this case and remand it for a new trial. However, defendant has made other valid claims of error which might arise in another trial, which we shall discuss.

Defendant argues his sixth amendment right to confront witnesses was violated by allowing Officer Keith to testify to a statement made by Mark Basden, who died prior to being charged in this burglary. The statement was admitted under the coconspirator exception to the hearsay rule.

In *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the United States Supreme Court held that the sixth amendment right of an accused to cross-examine the witnesses against him is violated by the introduction of a codefendant's statement inculpating the defendant. The Court recognized that such statements are "presumptively unreliable" for the reasons that hearsay is generally considered to be unreliable, but also because "the arrest statements of a codefendant have traditionally been viewed with special suspicion" (*Lee v. Illinois* (1986), 476 U.S. 530, 541, 90 L. Ed. 2d 514, 526, 106 S. Ct. 2056, 2062) due to the codefendant's desire to exonerate himself.

In order for the exception to apply, the statement must be made in furtherance of and during the pendency of the conspiracy. (*People v. Parmly* (1987), 117 Ill. 2d 386, 393, 512 N.E.2d 1213, 1216.) Statements made after the crime, for the purpose of concealment, are admissible so long as the efforts at concealment are proximate in time to the commission of the principal crime. *People v. Link* (1981), 100 Ill. App. 3d 1000, 1006, 427 N.E.2d 589, 593.

Here, the police officer testified that he had questioned Basden on March 18, 1988, at a time before the police had sufficient probable cause to arrest him. The officer said that Basden indicated he and defendant had been in Havana on the night in question but denied their participation in the burglary. Thus, although the statement was inculpatory in that it confirmed defendant's presence in the town while the burglary was committed, it was for the purpose of conceal-

ment in that it denied the commission of the offense by the conspirator. However, it did not have the "presumptive unreliability" found by the United States Supreme Court in *Lee,* since Basden was not attempting to shift the blame from himself to defendant. There was, therefore, no error in the admission of Basden's statement.

■ Defendant next argues his statement to Keith inquiring as to whether "deals" were made in Keith's county should not have been admitted under Supreme Court Rule 402(f), which provides:

"If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, or if judgment on a plea of guilty is reversed on direct or collateral review, neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding." (107 Ill. 2d R. 402(f).)

The rule was said to be a recognition of the significance of the negotiating process and the "appreciation of the devastating effect of the introduction of plea-related statements in the trial of the accused." *People v. Friedman* (1980), 79 Ill. 2d 341, 351, 403 N.E.2d 229, 235.

In *Friedman,* the defendant called the Attorney General and inquired about "making a deal." (79 Ill. 2d at 350, 403 N.E.2d at 234.) The defendant said he would, if convicted, rather go to a Federal prison than a State prison, and the investigator for the Attorney General indicated he had no control over that. The supreme court said defendant's unsolicited statement was an offer to enter negotiation and a willingness to bargain and was thus inadmissible under Rule 402(f).

Here, although defendant's statement was not so clearly a demonstration of defendant's willingness to bargain, in that he had previously denied any involvement in the burglaries, it would nevertheless have the same "devastating effect." The jury could have taken the statement as an admission of guilt despite defendant's protestations of innocence. The statement should not be introduced on retrial.

Defendant next argues he was denied his right to a fair trial where the prosecutor repeatedly referred to the State's evidence as "undisputed," "uncontradicted," or "undenied." Defendant notes the prosecutor used those words a total of 18 times in his closing argument to the jury. Defendant maintains such argument improperly focused on defendant's failure to testify and constituted plain error.

■ The parties recognize that the State must not make arguments intended or calculated to draw the jury's attention to the defendant's failure to testify. (*Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229; *People v. Burton* (1969), 44 Ill.

2d 53, 254 N.E.2d 527.) The prosecution may, however, refer to the fact that the testimony of the State's witnesses is uncontradicted even though the defendant would be the only person who could have contradicted it (*People v. Mills* (1968), 40 Ill. 2d 4, 8-9, 237 N.E.2d 697, 700), because this involves no more than an accurate summary of the evidence.

■ Here, the State noted "the evidence in large part, at least in my view, is undisputed." He noted Rohlfs' testimony was undisputed, it was undisputed that defendant was in Havana on the night of the burglary, and that all the other evidence was undisputed except for one witness who testified defendant was with her on March 13 rather than at Rohlfs' apartment as Rohlfs had testified. The prosecutor then asked in rebuttal if defendant's counsel ever denied defendant drove Rohlfs to Havana, denied there were burglary tools in the car, denied Basden and defendant looked in the window of the jewelry store, denied defendant cut the wires, or denied defendant disposed of the jewelry in Springfield.

While such comments may have been made only to emphasize the strength of the State's case, there is a point where they overreach the limits of acceptable argument. Moreover, as pointed out by the appellate court in *People v. Escobar* (1979), 77 Ill. App. 3d 169, 178, 395 N.E.2d 1028, 1035, while the word " 'uncontradicted' " could apply to almost anyone, " 'undenied' " points more at the defendant. Anyone can contradict anything, but one denies an accusation. There, the repetition of the phrase "uncontradicted and undenied" six times was seen as deliberate and assured that the jury would not miss the nuance. While repetition itself is not necessarily fatal (*People v. Hopkins* (1972), 52 Ill. 2d 1, 284 N.E.2d 283), the prosecutor must take care, on retrial, not to unduly emphasize the lack of denial.

■ Defendant's final arguments relate to sentencing. Defendant maintains initially that the trial court erred in considering the proceeds he received from the burglary as a factor in aggravation. Prior to imposing the maximum extended-term sentences on defendant, the court noted that the defendant "did receive compensation for the offense." We agree that this was an improper factor to consider.

In *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906, the court considered a virtually identical factual situation. Prior to imposing sentence, the trial court noted that defendant's receipt of compensation in the form of the burglary's proceeds was an aggravating factor. The supreme court noted, however, that the statute applied only to a defendant who receives remuneration, other than the proceeds from the offense itself, to commit the crime. The court said since

"most burglaries and every theft involve proceeds, it is reasonable to conclude that the legislature already considered that factor in establishing the penalties." (*Conover*, 84 Ill. 2d at 405, 419 N.E.2d at 909.) On retrial, the court should not consider the proceeds from the burglary as an additional factor in aggravation.

■ Defendant next contends his extended-term sentence of 10 years' imprisonment for theft should be reduced, because it is not an offense of "the class of the most serious offense of which the offender was convicted." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2(a).) Defendant was convicted of a Class 3 felony for theft and a Class 2 felony for burglary. Thus, under the extended-term sentencing provision, only the burglary conviction could provide the basis for an extended-term sentence. (*People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569.) The State concedes the extended term was improper, and, on remand, should defendant be again convicted of burglary and theft, the court should not impose an extended-term sentence for that offense.

Defendant's final contention is that the trial court erred in failing to advise him of the possibility of treatment under the Alcoholism and Substance Abuse Act (Act). Section 22 of the Act provides:

"If a court has reason to believe that an individual convicted of a crime is an addict and the court finds that he is eligible to make the election provided for under section 21, the court shall advise him that he may be placed on probation if he elects to submit to treatment and is accepted for treatment by a licensed program designated by the Department." (Ill. Rev. Stat. 1987, ch. 111½, par. 6322.)

Section 21 provides that "[a]n addict who is convicted of a crime may elect treatment under the supervision of a licensed program designated by the Department unless" certain circumstances are present which are not applicable here. (Ill. Rev. Stat. 1987, ch. 111½, par. 6321.) In *People v. Richardson* (1984), 104 Ill. 2d 8, 17, 470 N.E.2d 1024, 1029, the supreme court held that the court's duty to advise is mandatory.

Defendant argues here, the court had reason to believe, based on defendant's presentence report, that defendant was an addict. He concludes, therefore, that he should have been advised of his eligibility for treatment under the Act and, based on *Richardson*, the cause should be remanded for resentencing.

Because we are remanding this case for other reasons, and because defendant is now aware of his right to elect treatment under the Act, we need not decide whether the court's failure to inform

defendant of his eligibility under the Act was reversible error.

For the reasons stated, the judgment of the trial court is reversed, and we remand the cause for a new trial consistent with this opinion.

Reversed and remanded.

KNECHT and SPITZ, JJ., concur.