(No. 72798.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RONALD JONES, Appellee.

*Opinion filed November 19, 1992.*

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Kenneth T. McCurry and Margaret J. Faustmann, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Pamela Z. O'Shea, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

A jury found defendant, Ronald Jones, guilty of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)) and aggravated unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3.1). The court sentenced the 16-year-old defendant as an adult to a term of 7½ years' imprisonment for armed robbery. Also, at the sentencing hearing,

the court vacated the judgment of conviction for unlawful restraint but let the finding of the jury stand.

On appeal, the appellate court reversed the remaining armed robbery conviction, finding three reversible errors at trial; specifically, that the trial court improperly admitted hearsay identification testimony by two police officers; that it improperly admitted the victim's testimony about a prior lineup; and that the State violated Supreme Court Rule 412 when it failed to disclose the name of an identifying witness. 219 Ill. App. 3d 795.

The State petitioned this court for leave to appeal (134 Ill. 2d R. 315), which was granted. The defendant requests cross-relief in the form of a new sentencing hearing in the event we reinstate his conviction.

Vivian Wallace testified at the defendant's trial that on the evening of July 5, 1986, she was entering her car on the passenger's side when a man came up to the car with a gun drawn. He told her to open the door or he would blow her brains out. He entered the car on the driver's side, and a second armed man, later identified as the defendant, entered the back of the car. She was able to see both men.

Both men held their guns to Wallace's head, and the defendant demanded her purse. She turned around to hand it to defendant, and again saw his face before the driver told her to face forward. The defendant rummaged through her purse and the driver started the car and drove to an alley. After they stopped, the defendant demanded Wallace's gold earrings, rings and necklace. Both men still had their guns aimed at her head. Defendant then got out of the back seat and sat in front, where Wallace again saw his face. The two men ordered her out of the car and told her not to turn around or she would be shot. The men then drove away, and Wallace telephoned the police.

Wallace also testified that she viewed more than one lineup. She made no identification in the first lineup, and identified defendant in the second lineup.

Officer Paul Phillips testified that two nights later, on July 7, he and his partner received a report of a car stripping in progress. They drove to the scene and found two men stripping the victim's car. Phillips was about five feet away from one of the men and stood face to face with him for a second or two. The man then ran off and Phillips gave chase, but he was unable to catch him. His partner apprehended the other man, Frederick Colvin. Phillips identified the defendant as the man he chased, over defense objections that the State had not disclosed Phillips' name as an identification witness despite a discovery request to do so.

Detective Anthony Maslanka testified to his investigation of Wallace's armed robbery, and through this testimony it was clear that he learned the defendant's name after speaking with Fred Colvin. Similar statements were also made by Officer Phillips.

The first reversible error found by the appellate court was the testimony offered by Maslanka and Phillips concerning their discussions with Fred Colvin. The court felt that, although neither specifically articulated that Colvin gave them the defendant's name, the testimony as a whole made it clear that Colvin was the source of this information. The appellate court ruled that their testimony showed more than the investigatory steps taken by the witnesses; it showed the substance of what Colvin said. This, therefore, was hearsay. The court found that the hearsay's effect was exacerbated by comments made during the prosecutor's opening statement and closing arguments, and concluded that it amounted to reversible error. We disagree.

It is undisputed that an officer may testify to his investigatory procedures, including the existence of con-

versations, without violating the hearsay rule. This is true even if a logical inference may be drawn that the officer took subsequent steps as a result of the substance of that conversation. *People v. Gacho* (1988), 122 Ill. 2d 221.

The defendant argues that the testimony in this case exceeds that allowed by *Gacho*, since Phillips and Maslanka testified to the substance of Colvin's statements. *Gacho* stated that, "[h]ad the substance of the conversation * * * been testified to, it would have been objectionable as hearsay." (*Gacho*, 122 Ill. 2d at 248.) However, this language is not applicable to the facts of this case.

In *Gacho*, the defendant was convicted of murder, aggravated kidnapping, and armed robbery, and was sentenced to death. The defendant challenged the sufficiency of his trial, *inter alia*, because of alleged hearsay in a police officer's testimony and improper references to this testimony during closing argument. This occurred when the officer, while detailing his investigation, testified to a conversation he had with the surviving victim in which the victim identified the defendant as the perpetrator of the crime.

This is the dispositive factual difference between *Gacho* and the instant case. In *Gacho*, the substance of the conversation would have gone to the very essence of the dispute: whether the defendant was the man who committed the crime. Thus, if the substance of the conversation came into evidence it would inevitably go to prove the matter asserted.

The substance of the conversations with Colvin, on the other hand, could in no way go to prove any matter relevant to the trial. If offered to prove the matter asserted, the testimony would show that the defendant was involved in the car stripping, or at least present at the scene. This provides nothing to the State to help

prove the defendant's guilt in the armed robbery. Rather, this simply showed the jury how the officer and the detective came to suspect the defendant.

Further, this event was entirely relevant to the trial. Before their investigation, Phillips and Maslanka did not know who committed the armed robbery. Eventually, they suspected the defendant. Somewhere along the line, they had to learn of him. Any chronological retelling of the events is going to have to include the point in time when the defendant became a suspect. The testimony elicited by the prosecutor did nothing more than that. To label this hearsay is to demonstrate a fundamental misunderstanding of the hearsay doctrine.

We therefore also reject Jones' argument that the comments during the State's opening statement and closing argument require a new trial. Since the testimony itself was perfectly acceptable, there was no error when the prosecutor referred to it during the opening and closing comments.

Finally, Jones argues that there were several attempts to get hearsay admitted that were objected to and sustained. Defendant argues that, although the objections were sustained, the questions had the effect of exposing the jury to hearsay. This contention is without merit. The trial judge properly instructed the jury to disregard questions to which objections were sustained. This instruction cured any potential error that might have arisen, and reduced the transactions to what will happen in any trial: sustained objections to improper questions. If this were grounds for a new trial, no verdict could ever stand.

The second reversible error cited by the appellate court is that the victim was allowed to testify to a non-identification lineup. We agree with the appellate court that this was error; however, standing alone it does not

amount to reversible error. Thus, a new trial is not required.

We answered this question in *People v. Hayes* (1990), 139 Ill. 2d 89, a case factually indistinguishable from the case at bar. In *Hayes*, the defendant was convicted of murder and six counts of armed robbery. The defendant alleged reversible error, *inter alia*, when four prosecution witnesses were allowed to testify that they viewed pictures of persons other than the defendant and made no identification.

This court ruled that this testimony was inadmissible, as these were simply prior consistent statements made to corroborate the testimony at trial. However, this court found that the error was not so prejudicial that it deprived the defendant of a fair trial, due to the overwhelming evidence of the defendant's guilt. *Hayes*, 139 Ill. 2d at 139.

Similarly, the testimony of the nonidentification lineup in this case should not have been allowed. The State argues that this testimony was necessary to counter the defense's allegation that the lineup was overly suggestive and that the identification was therefore not trustworthy. This is simply a fancy way to argue that it was necessary to corroborate Wallace's testimony, which is precisely what *Hayes* disallows. However, like *Hayes*, this testimony did not prejudice the defendant. Although the evidence in this case was not as overwhelming as it was in *Hayes*, neither was it so close that this error standing alone requires reversal.

The final trial error found by the appellate court was a violation of Supreme Court Rule 412 (134 Ill. 2d R. 412) when the State failed to adequately respond to a discovery request made by the defendant. This ruling was the result of a misreading of the rule.

The defendant's motion for discovery contained three separate requests for witnesses, occurrence witnesses,

and identification witnesses. The State responded to these requests with a single, general reply that it might call as witnesses anyone named in a variety of documents including police reports. The defendant alleges that this response did not comply with the mandates placed upon the State by the rule.

Rule 412 provides in pertinent part:

"(a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:

(i) the names and last known addresses of persons whom the State intends to call as witnesses, together with their relevant written or recorded statements, memoranda containing substantially verbatim reports of their oral statements, and a list of memoranda reporting or summarizing their oral statements." 134 Ill. 2d R. 412(a)(i).

The plain language of the rule refutes the defendant's argument. The rule very specifically delineates the materials which the State must turn over to defense counsel upon request, including the names of possible witnesses. However, nowhere does it indicate that a defendant may demand from the State the categorization that the defendant did here, and the State was under no obligation to provide this breakdown. We reject the invitation to expand the State's discovery obligations to include classification of witnesses in any manner and detail that a defendant's whim might direct. The State satisfied the requirements of the rule.

Finally, defendant alleges that his sentencing hearing was defective. Since the appellate court reversed his conviction, it did not address this issue. Defendant requests this court, in the event we reinstate his conviction, to either remand this cause to the appellate court to decide the propriety of the sentencing hearing or to render

164

judgment ourselves. However, defendant has already completed his sentence. We therefore need not resolve this issue, as no relief can be granted.

The judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*