THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. McEVORY BIGGERS, Defendant-Appellant.

Fourth District   No. 4—93—0663

Opinion filed June 30, 1995.

KNECHT, P.J., dissenting.

Daniel D. Yuhas and Martin J. Ryan, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

Following his May 1993 jury trial, defendant McEvory Biggers was convicted of armed robbery (720 ILCS 5/18—2 (West 1992)). Defendant was sentenced to serve 16 years in the Illinois Department of Corrections. Defendant appeals, contending that the State failed to prove him guilty beyond a reasonable doubt and the trial court abused its discretion in admitting evidence that he committed a later armed robbery at the same location. We affirm.

At trial, the State presented the testimony of two eyewitnesses to the charged May 29, 1992, robbery and one eyewitness to the July 7, 1992, robbery. Both robberies occurred at the Picadilly Beverage Shop (Picadilly) in Champaign, Illinois. Richard Babey, assistant manager of the Picadilly, testified that around 9:55 p.m. on May 29, 1992, an African-American male entered the store and asked for a pack of Newport cigarettes. Babey was standing behind the cash register with his co-worker Steve Fifer. After Babey got the cigarettes and turned around, he saw the man was holding a small handgun in his right hand. The "bluing," or metal coating, was worn off the handgun. The man asked Babey for the money in the cash register and the lottery terminal. Babey placed the money on the counter, and the robber asked Babey to put the money in his hand. The robber spoke softly, wore no gloves, and did not touch anything in the store. After Babey handed over the money, the robber ordered Babey and Fifer to the back of the store. The robber then backed out the front door.

Babey testified that the robber wore sunglasses, a dark ball cap, a maroon windbreaker, and orange sweatpants. Babey described the robber to the police as approximately 6 feet 1 inch tall, 210 pounds, in his thirties, and clean shaven.

On July 22, 1992, Babey met with Detective John Schweighart at the Champaign police department. Babey helped the police prepare a composite sketch of the robbery suspect. Babey also looked at a number of photographs of potential suspects, none of which included defendant, and was unable to make an identification. Babey met again with Detective Schweighart on August 17, 1992. At this meeting, Babey identified defendant from a photo array as the man who committed the robbery. Babey told Detective Schweighart that he would rate his certainty as a "strong eight" on a scale of 1 to 10 that the man in the photograph was the robber, but that he wanted to view an in-person lineup. On August 25, 1992, Babey picked defendant from a five-person lineup as the man who committed the robbery. In court, Babey identified defendant, the only African-American in the room, as the robber.

Steve Fifer was also present during the May 29 robbery. Fifer's testimony was similar to Babey's. Unlike Babey, Fifer was facing the robber when the robber pulled a handgun with worn bluing from his windbreaker pocket. Fifer's description of the robber was identical to Babey's description. Fifer was never shown any suspect photographs by the police, but he attended the August 25, 1992, lineup with Babey. Fifer identified defendant, both at the lineup and in court, as the man who committed the robbery.

Over defendant's objection, the State presented the testimony of David Harding, the manager of the Picadilly, regarding the robbery that took place July 7, 1992. Harding testified that shortly before closing at 10 p.m., an African-American man entered the Picadilly and stopped at the lottery machine. The man asked to play the lottery, and Harding told him that the lottery machine was closed and that the store was about to close. The man then pulled out a small, black handgun from his pants pocket and told Harding to open the drawer to the lottery machine. Harding opened the drawer and showed the robber that it contained no money. The robber then directed Harding to open the cash register. After Harding removed the money, the robber told him to lift the cash tray out of the register. The robber reached into the register and pulled out a $100 bill. He left the Picadilly after ordering Harding to walk to the back of the store.

Harding described the robber as 30 to 35 years old, 6 feet 2 inches tall, 200 pounds, with short black hair and thin facial hair over the

upper lip and down the chin. The robber wore a white baseball cap, sunglasses, a plaid shirt, and dark gray or green pants. The robber did not wear gloves, and he did not touch anything in the Picadilly other than to take the $100 bill from the cash register. The robber never raised his voice. Harding testified that he was shown photo arrays on July 8, 1992, and July 22, 1992, by Detective Schweighart, but he was unable to identify the robber. On August 17, 1992, Harding was shown another photo array, which this time included a photograph of defendant. Harding identified the photograph of defendant as the robber. Detective Schweighart asked Harding to rank his certainty on a scale of 1 to 10, and Harding replied, "A very strong eight." On August 25, 1992, Harding picked defendant from an in-person lineup, and he also identified defendant at trial.

Defendant testified that he would have been home with his girlfriend, Charlene Moore, on the night of May 29, 1992, as the two of them drank together every Friday night. Moore corroborated this testimony. Defendant further testified that he was with his roommate Roosevelt Jenkins on the night of July 7, 1992, but the State presented evidence that Jenkins was incarcerated from July 4 through July 14, 1992.

Defendant described himself as being 6 feet $3^1/_2$ inches tall and 41 years old. He stated that since 1977 he has continuously worn a thin mustache. Defendant stated that he now weighs 210 pounds, but at the time of the robberies he weighed from 180 to 185 pounds.

■ When a defendant contends on appeal that the State did not prove the offense beyond a reasonable doubt, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) Here, defendant does not deny that an armed robbery took place at the Picadilly on May 29, 1992. A rational trier of fact could conclude that defendant was the robber, based on the identifications made by Fifer and Babey. Fifer and Babey testified that they saw the robber at close range in a well-lit store. Although Babey's and Fifer's descriptions of the height and age of the robber varied slightly from defendant's self-description, the variances are not so great as to create a reasonable doubt. Babey and Fifer described the robber as clean shaven, and defendant wears a mustache. However, defendant described his facial hair as always having been thin, and in photographs of defendant included in the record the mustache is barely noticeable. We cannot say the jury improperly weighed the evidence.

■ Nevertheless, defendant argues that his identification as the robber is inherently suspect, because (1) the witnesses were under a high amount of stress during the robbery, (2) studies indicate that identifications across racial lines are less accurate than interracial identifications, and (3) over two months elapsed between the robbery and the lineup identification. However, " 'factors such as stress, opportunity to observe, distortion of memory, and problems of interracial identification, are within the realm of common experience and can be evaluated by the jury.' " (*People v. Clark* (1984), 124 Ill. App. 3d 14, 21, 463 N.E.2d 981, 987, quoting *People v. Brown* (1981), 100 Ill. App. 3d 57, 72, 426 N.E.2d 575, 584.) The jury simply found Babey and Fifer to be credible observers. The appellate defender attached three articles to its brief challenging the reliability of eyewitness identification. The supreme court has expressed its concern with such studies. (*People v. Enis* (1990), 139 Ill. 2d 264, 289-90, 564 N.E.2d 1155, 1165.) Just as it would be inappropriate for a jury to conclude, based on expert testimony, that all eyewitness testimony is unreliable, it would be inappropriate for a reviewing court, based on these articles, to conclude that the testimony presented at trial here was unreliable.

■ Defendant argues that the credibility of the State's witnesses was improperly bolstered, because the State presented evidence that Babey and Harding made no identification when presented with photo arrays that did not contain a photograph of defendant, and because Harding was allowed to testify that defendant was the perpetrator in a subsequent armed robbery.

Generally, a witness should not be permitted to testify that he made no identification when viewing photographs of persons other than defendant, because "witnesses may not testify as to statements made out of court to corroborate their testimony given at trial" relative to the same subject. (*People v. Hayes* (1990), 139 Ill. 2d 89, 138, 564 N.E.2d 803, 824; see also *People v. Jones* (1992), 153 Ill. 2d 155, 162, 606 N.E.2d 1145, 1148.) We agree that the nonidentification testimony should not have been admitted at trial, because it was presented simply to corroborate the witnesses' subsequent identification of defendant. However, defendant neither objected to the testimony at trial nor raised the issue in his post-trial motion. Therefore, the issue was not preserved for appeal. (*People v. Towns* (1993), 157 Ill. 2d 90, 99-100, 623 N.E.2d 269, 273, *cert. denied* (1994), 511 U.S. 1115, 128 L. Ed. 2d 678, 114 S. Ct. 2122.) Even if the issue had not been waived, we do not believe the nonidentification testimony was so prejudicial that it deprived defendant of a fair trial. (See *Jones*, 153 Ill. 2d at 162, 606 N.E.2d at 1148; *Hayes*, 139 Ill. 2d at 139, 564 N.E.2d

at 824.) Defendant was identified at a live lineup by not only Harding and Babey, but also by Fifer, who had never been shown a photo array.

■ The prosecution generally may not show defendant committed another armed robbery, in an attempt to prove that he committed the armed robbery charged. While it may be true that a person who commits one crime is likely to commit another, any such relevancy is considered outweighed by the prejudicial effect on the jury. (*People v. Lehman* (1955), 5 Ill. 2d 337, 342, 125 N.E.2d 506, 509.) However, evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime. (*People v. Jones* (1993), 156 Ill. 2d 225, 239, 620 N.E.2d 325, 330.) One acceptable purpose is:

> "To prove other crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated murders, robberies or rapes. The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a *signature*." (Emphasis added.) 1 J. Strong, McCormick on Evidence § 190, at 801-03 (4th ed. 1992).

" '[T]here must be some clear connection between the other crime and the crime charged which creates a logical inference that if defendant committed one of the acts, he may have committed the other act.' " (*People v. Overlin* (1993), 241 Ill. App. 3d 530, 539, 608 N.E.2d 925, 930, quoting *People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 486-87, 485 N.E.2d 1292, 1297.) The inference does not arise where the features linking the two crimes are common to many crimes, including those not committed by the defendant.

■ It has been said that the Illinois courts have adopted less stringent requirements than the "signature" requirement, that other-crimes evidence is admissible where the other offense is substantially similar and has common features with the offense charged. *People v. Bryan* (1987), 159 Ill. App. 3d 46, 51-52, 511 N.E.2d 1289, 1293; *cf. Jones*, 156 Ill. 2d at 240, 620 N.E.2d at 331 (enough similarities to demonstrate a pattern or "signature"); *cf. People v. Connolly* (1989), 186 Ill. App. 3d 429, 434, 542 N.E.2d 517, 521 (characteristics were not so unusual and distinctive as to be like a "signature").

We reject the argument that under *Bryan* another armed robbery will generally be admissible where defendant is charged with armed robbery—that one armed robbery is pretty much like another, and all have some common features. *Modus operandi* requires a high degree of identity between the facts of the crime charged and the other offense. (*People v. Cruz* (1994), 162 Ill. 2d 314, 348-49, 643 N.E.2d

636, 653.) Although some dissimilarity will always exist between independent crimes, *modus operandi* refers to a pattern of criminal behavior so distinctive that separate crimes are recognized as the handiwork of the same wrongdoer. (*Cruz*, 162 Ill. 2d at 349, 643 N.E.2d at 653; *cf. People v. Hayes* (1988), 168 Ill. App. 3d 816, 522 N.E.2d 1279 (enough that armed robberies occurred in same shopping plaza, about same time of evening, and assailant used a silver-colored gun).) McCormick says that some courts are less careful, citing an Arizona case where three robberies at Circle K markets were held admissible to prove defendant had committed the charged robbery and murder at the Low Cost Market, " 'a convenience store similar to Circle K Markets.' " 1 J. Strong, McCormick on Evidence § 190, at 802 n.21 (4th ed. 1992), quoting *State v. Smith* (1985), 146 Ariz. 491, 499, 707 P.2d 289, 297.

Mere general areas of similarity may be sufficient where evidence of the other crime is offered for some purpose other than to show *modus operandi*, such as absence of an innocent frame of mind or the presence of criminal intent. (*Cruz*, 162 Ill. 2d at 349-50, 643 N.E.2d at 653.) For example, in *People v. Miller* (1993), 254 Ill. App. 3d 997, 626 N.E.2d 1350, defendant secured admittance to various homes under the guise of performing home repairs. The evidence of the other crimes was admissible to show intent, the absence of innocent design.

In some cases there are definite distinctive links between the two cases. An example would be where defendant was accompanied by the same two individuals during both crimes. (*People v. Maxwell* (1992), 148 Ill. 2d 116, 131, 592 N.E.2d 960, 967.) Another example would be where defendant was carrying what appeared to be the same gun during both crimes. (*People v. Taylor* (1984), 101 Ill. 2d 508, 521, 463 N.E.2d 705, 712.) Such a distinctive link would outweigh a number of dissimilarities. In other cases, no particular factor is unique, but it is the totality of the factors which is probative. (*Jones*, 156 Ill. 2d at 240, 620 N.E.2d at 331.) In those cases, a few dissimilarities may destroy the effect of the similarities. In either case, the fact that defendant is identified as the perpetrator in both incidents is alone insufficient. Such identification will be present even when the only purpose for admission is to show a propensity to commit crime.

■ The *modus operandi* exception is generally used when there is a question about the identity of the perpetrator. (*People v. Denny* (1993), 241 Ill. App. 3d 345, 358, 608 N.E.2d 1313, 1322.) If there is no question about identity, or intent-lack of mistake, then the fact that two crimes involve the same *modus operandi* should not justify admission. The fact that crimes are distinctive does not justify their admis-

sion simply to show a propensity to commit crime. Identity is in issue whenever defendant denies that he was the perpetrator, but defendant does not deny that in every case. See *Denny*, 241 Ill. App. 3d at 359, 608 N.E.2d at 1322-23 (defendant did not deny having sexual relations, but argued victim consented).

Identity was in issue here as defendant denied he robbed the Picadilly on May 29, 1992. It is argued that there are substantial similarities between the two crimes: in each instance, the robber entered the Picadilly around 10 p.m., disguised only with sunglasses and a baseball cap. In both robberies, the robber used a small handgun, spoke in a soft voice, demanded that employees empty both the lottery machine and the cash register, avoided touching anything within the store, and ordered employees to the back of the store before leaving.

■ Both crimes are essentially garden variety liquor store robberies. It is unusual, however, to find two armed robberies involving the same victim. Even where the two robberies do not involve distinctive clothing, actions, or weapons, where those features are similar and the same victim is involved we believe there is a " 'high degree of identity' between the facts of the crime charged and the other offense," at least in the facts of this case. (*Cruz*, 162 Ill. 2d at 348-49, 643 N.E.2d at 653.) More is involved in some same-victim cases than a mere propensity to commit crime. In same-victim cases the fact that defendant committed the robbery which was not charged indicates that defendant knew where the victim was located, knew where the money was kept, knew the hours of operation, and knew of a method which could be successful. There was a distinctive pattern here. It makes no difference whether the uncharged robbery occurred before or after the charged robbery. In either case the fact that defendant is identified as the perpetrator of the one offense bolsters his identification as the perpetrator of the other. The fact that the victim is the same is not a definite distinctive link, as discussed above, but it is a significant factor among the totality of factors. Along similar lines, in sex-related cases, evidence of other sexual acts between a defendant and a complainant is held admissible to show the relationship and familiarity of the parties. *People v. Harper* (1993), 251 Ill. App. 3d 801, 805, 623 N.E.2d 775, 777.

In *Denny* we ruled the evidence of the other crime inadmissible despite the State's argument that both crimes "involved the same victim, the same house, and the same knife." (*Denny*, 241 Ill. App. 3d at 356, 608 N.E.2d at 1321.) In *Denny* defendant was charged with home invasion and aggravated criminal sexual assault upon a woman he had lived with for at least four years. The other crime involved

defendant's breaking down the door of the woman's house after seeing her with another man, then striking him and threatening her with a knife. However, there was no identification purpose in *Denny*, nor was there any intent purpose or "any other purpose we can think of." *Denny*, 241 Ill. App. 3d at 359, 608 N.E.2d at 1323.

It is true that the trial court here did not make an express finding that the probative value of the evidence outweighed its prejudicial effect, but the transcript reveals that the court was concerned with the prejudicial effect of the evidence. A reviewing court will assume that the trial judge gave appropriate consideration to the relevant factors. (*People v. Washington* (1973), 55 Ill. 2d 521, 523-24, 304 N.E.2d 276, 277; *People v. Purnell* (1984), 129 Ill. App. 3d 253, 260-61, 472 N.E.2d 183, 189.) We hold that the trial court did not abuse its discretion in admitting the evidence.

For the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

McCULLOUGH, J., concurs.

PRESIDING JUSTICE KNECHT, dissenting:
I believe the majority mistakenly concludes it is unusual to find two armed robberies involving the same victim. The record does not disclose how many times or how often the Picadilly has been the scene of an armed robbery.

In May, a 6-foot 1-inch-tall, clean-shaven, African-American male wearing a dark ball cap and sunglasses asked for cigarettes near the cash register of the Picadilly and thereafter used a small handgun to persuade two clerks to give up the money in the cash register and the lottery terminal.

In July, five to six weeks later, a 6-foot 2-inch African-American male with facial hair wearing a white baseball cap and sunglasses asked to play the lottery at the Picadilly and then used a small, black handgun to persuade a single clerk to let the robber pull a $100 bill out of the cash register, after being shown the lottery terminal was empty.

Two liquor store robberies five or six weeks apart by a man wearing a baseball hat and sunglasses—even if at the same liquor store and near closing time—are not distinctively similar. This behavior does not constitute *modus operandi*. The facts simply do not show a pattern of criminal behavior *so distinctive* that separate crimes can be recognized as the acts of the same person.

One handgun had the metal coating worn off. The other was black. One robber wore a dark ball cap, the other a white ball cap. One robber made a point to have the clerks remove cash from the register and lottery terminal and place it in his hands. The other robber reached into the cash register beneath the cash tray and extracted a $100 bill.

While it is easy after the trial to look back and catalog the similarities and dissimilarities so as to bolster one view or the other, the real point here is these robberies are not so unusual or distinctive as to justify the admission of evidence of the second robbery and identification. The prejudice to defendant far exceeds the probative value of the evidence, and the second identification and robbery were not critical components of the State's case.

I believe the trial court abused its discretion in admitting evidence of the July 7 armed robbery.