Gates *v.* The People.

PHELPS and McGIRR, for plaintiff in error.

WALLACE, for the people.

GEORGE GATES, Plaintiff in Error, *v.* THE PEOPLE, Defendants in Error.

ERROR TO LA SALLE.

A juror ought to stand indifferent between the prosecution and the accused, and where a juror was challenged on his statement on oath that no degree of circumstantial evidence would induce him to render a verdict of guilty against the prisoner charged with a capital offence: —

*Held,* that the challenge was properly allowed.

*Held,* also, that a challenge was properly allowed, when a juror stated on oath

that he should be very reluctant to render a verdict of guilty, even if his judgment was convinced of the prisoner's guilt; but he did not know but that he might be starved to render it.

The court may, in its discretion, permit witnesses to testify in chief on the part of the prosecution, whose names have not been furnished to the prisoner prior to his arraignment.

Confessions induced by the appliance of hope or fear are not admissible in evidence; but if facts are elicited by such confession, they may be given in evidence. So where a witness offered to render such assistance to a prisoner charged with murder, as he might desire, and the prisoner requested him, to tell his brother to *write that letter*, and that he, the witness, would then place the letter in the post-office at a particular place, and the witness carried the message, obtained the letter, and instead of placing it in the office delivered it to the prosecutor, and it was read in evidence on the trial: —

*Held*, that it was rightly received in evidence, and the fact that the prisoner was deceived by the witness, did not render the evidence inadmissible.

That the former declarations of a witness, whose credibility is attacked, may be given in evidence to corroborate his testimony in certain cases, is well settled, though whether they are admissible in all cases, the authorities are conflicting, and the question is here expressly waived.

*Held*, that evidence, showing that a confederate of the prisoner and the prisoner had money in their possession immediately after the murder, similar to the. money, both in amount and description, known to have been in possession of the murdered man, coupled with the fact that both the prisoner and his confederate were destitute of money prior to the murder, is admissible.

This cause was tried at the May term, 1853, of the La Salle Circuit Court, LELAND, Judge, when the plaintiff in error was convicted of the murder of Daniel Liley, and sentenced to be executed, from which judgment the plaintiff in error prosecuted his writ of error.

TREAT, C. J. George Gates was convicted of the murder of Daniel Liley, and sentenced to be executed. Several exceptions were taken in the course of the trial, which will be considered in their order.

First. A juror stated on oath, that he had no conscientious scruples against finding a man guilty of an offence punishable with death, where the proof was positive, but no degree of circumstantial evidence would induce him to render such a verdict; that before he would find a verdict of guilty, he should require the positive testimony of a witness who saw the crime committed. Another juror stated on oath, that he should be very reluctant to render a verdict of guilty of an offence punishable with death, even if his judgment was convinced of the prisoner's guilt; that he would probably be the last juror to agree to such a verdict, but he did not know but that he might be starved to render it; he thought he should hang the jury, and thus defeat a verdict of guilty. The prosecution challenged

these jurors for cause, and the challenges were allowed by the court.

A juror ought to stand indifferent between the prosecution and the accused. He should be in a condition to find a verdict in accordance with the law and the evidence. On this principle, it is a good cause of challenge to a juror in a capital case, that he has conscientious scruples on the subject of punishment by death, that will prevent him from agreeing to a verdict of guilty. Commonwealth *v.* Lesher, 17 Serg. & Rawle, 155 ; The People *v.* Damon, 13 Wend. 351 ; Gross *v.* The State, 2 Carter, 329 ; United States *v.* Cornell, 2 Mason, 91 ; United States *v.* Wilson, Bald. 78. It would be but a mockery to go through the forms of a trial, with such a person upon the jury. The prisoner would not be convicted, however conclusive the proof of his guilt. And although these jurors did not profess to entertain scruples to the same extent, yet neither of them was competent to try the case. Their minds were not in a condition to decide the issue according to the law and the evidence. One of them would not agree to a verdict of guilty except a witness testified that he saw the murder committed ; and yet it is well settled, that a prisoner may be convicted upon circumstantial evidence only. The present case shows the utter incompetency of such a juror. No witness was present when the crime was perpetrated ; and yet the evidence leaves not a doubt on the mind of the guilt of the prisoner. If he had been suffered to go upon the jury, a mistrial would have been the certain result. The other juror was equally incompetent. He would not agree to a verdict of guilty upon either positive or circumstantial proof, unless compelled to do so from sheer physical necessity. Persons thus indisposed to execute the laws should never be called upon as jurors to administer them. It would be an idle ceremony to swear such men, well and truly to try the issue between the people and the prisoner, and a true verdict to render according to the law and the evidence. The challenges were properly allowed.

Second. The court permitted two witnesses to testify in chief on the part of the prosecution, whose names were not furnished to the prisoner prior to his arraignment. Before these witnesses were called, the counsel for the prosecution notified the prisoner that they intended to introduce them, and also furnished him with a statement of the facts they expected to prove by them; and at the same time they filed affidavits, in which they stated that they did not previously know any thing of the witnesses, nor of the facts to which they would testify.

The statute makes it the duty of the foreman of the grand

jury, to indorse on the indictment the " names of the witnesses, upon whose testimony the same shall have been found." R. S. ch. 58, § 3. It further declares : " Every person charged with treason, murder, or other felonious crime, shall be furnished, previous to his arraignment, with a copy of the indictment, and a list of the jurors and witnesses." R. S. ch. 30, § 180. In reference to these provisions, this court decided in the case of Gardner *v.* The People, 3 Scam. 83, that the prosecution is not restricted to the list of witnesses furnished to the prisoner before his arraignment; but that the court, in the exercise of a sound discretion, may permit the prosecution to introduce other witnesses. It was said : " Taking these two statutes together, it is evident that the list of witnesses, which is required to be furnished to the prisoner, prior to the arraignment, is to be composed of the witnesses indorsed on the indictment by the foreman of the grand jury." Again : " We think that the prosecution is not confined to the list of witnesses indorsed on the indictment, and furnished previous to the arraignment; but that the circuit court, in the exercise of a sound discretion, and having a strict and impartial regard to the rights of the community and the prisoner, may permit such other witnesses to be examined as the justice of the case may seem to require." That case seems to be conclusive of the question. The counsel for the prosecution were not aware of the existence of the evidence, either when the prisoner was arraigned, or when he was put upon his trial. They could not, therefore, have furnished him with the names of the witnesses. They notified him as soon as the testimony was discovered, and thus gave him as full an opportunity to meet and explain it as the circumstances of the case permitted. The discretion of the court was very properly exercised. If testimony could not be received under such circumstances, as it was well remarked in Gardner *v.* The People, " Many offenders would go unpunished, not on account of their own innocence, nor of the negligence of the State's attorney, but by a defect in the law itself, or a narrow and illiberal construction of it, not sanctioned by reason or justice."

Third. John Devol testified that he was sent by the sheriff to have an interview with the prisoner, and learn from him what he could about the murder of Liley; the prisoner was then in jail on another charge, and had not been arrested for this offence; the witness assured the prisoner that he was charged with committing the murder, and that officers were then in pursuit of him; the witness told the prisoner he was willing to assist him, and would do whatever he desired; the prisoner then requested the witness to go to his brother, John Gates,

Gates *v.* The People.

and tell him to " write that letter," and directed the witness to take the letter to Chicago and put it in the post-office; the witness delivered the message, and John Gates immediately wrote the letter; the witness handed the letter to the sheriff, and it was read in evidence on the trial; it purported to be written at Chicago by Liley, and was addressed to Hilton, with whom Liley resided prior to his death, and it stated that Liley would be absent for some months. All of this evidence was objected to as inadmissible. The general rule is, that confessions made by a prisoner under the influence of promises or threats, are not admissible in evidence against him. Confessions induced by the appliances of hope or fear, are not regarded as voluntarily made, and are therefore not to be relied on as true. But if facts are elicited by such confessions, they may be given in evidence; as where stolen goods are found in the place indicated by the prisoner. His statement is thus shown to be true, and not to have been fabricated by reason of any inducement; and it is competent to give the statement in evidence, in connection with proof of the finding of the goods. 2 Hawkins' P. C. ch. 46, § 36; 1 Greenl. on Ev. §§ 231, 232. And confessions may be received in evidence though induced by deception practised on the prisoner, or by false representations made to him for the purpose, if the inducement was not calculated to produce an untrue confession; as where a prisoner in jail asked the turnkey to put a letter in the post-office for him, and on his promise to do it, the prisoner handed him a letter addressed to his father, which the turnkey, instead of putting in the post-office, sent to the prosecutor, and it was read on the trial. Rex *v.* Derrington, 2 Carr. & Payne, 418; 1 Greenl. on Ev. § 229.

In this case, if the prisoner had made confessions to the witness, they would have been receivable in evidence. The witness made neither promises nor threats to induce him to confess. He simply offered to render the prisoner such assistance as he might desire. But no confessions were in fact made. The prisoner was not inclined to make a confidant of the witness. He would only trust him to carry an ambiguous message to his confederate in guilt, and then to convey a letter from that confederate to the post-office. The fact that he was deceived by the witness, did not render the evidence inadmissible. If the witness had deposited the letter in the post-office, it would have been competent evidence against the prisoner, in connection with proof that it was written at his instance. The letter and the attendant circumstances were properly admitted.

Fourth. The prisoner called witnesses to show that the character of Devol for truth and veracity was bad; and he proved

37*

that an indictment was then pending against Devol for being accessory after the fact to the murder of Liley. The court thereupon allowed the prosecution to prove by the sheriff, that Devol on coming out of the jail, and before seeing John Gates, gave the same account of the interview with the prisoner. This testimony was objected to as inadmissible. There seems to be a conflict of authority upon the question, Whether the former declarations of a witness whose credibility is attacked, may be given in evidence to corroborate his testimony. It will not be necessary in this case, to determine which is the better general rule. The authorities all agree that the former statements of the witness, may in some instances be introduced for the purpose of sustaining his testimony; as where he is charged with testifying under the influence of some motive prompting him to make a false statement, it may be shown that he made similar statements at a time when the imputed motive did not exist, or when motives of interest would have induced him to make a different statement of facts. So in contradiction of evidence tending to show that the witness's account of the transaction was a fabrication of a recent date, it may be shown that he gave a similar account before its effect and operation could be foreseen. 1 Starkie's Ev. 187; 1 Phillips' Ev. 308; Robb *v.* Hackley, 23 Wend. 50.

The testimony of the sheriff was properly admitted to sustain the credibility of the witness. From the fact that an indictment was then pending against the witness, the position would have been taken before the jury, that he testified under a strong inducement to relieve himself from all suspicion, by showing that the prisoner and John Gates were the guilty parties. His statement to the sheriff before he was accused, and before he carried the message from the prisoner to John Gates, was made when no such motive existed, and when he could not possibly foresee the result of his interview with the prisoner. If John Gates had refused to write the letter, the interview would not have resulted in any material evidence against the prisoner.

Fifth. It appeared in evidence that Liley had a considerable sum of money just before he was murdered, and that immediately afterwards the prisoner and John Gates had about the same amount of money of the same description. The evidence also tended to show that the prisoner was previously without money. The court permitted the prosecution to prove that John Gates was previously destitute of money, and could not pay the smallest demands against him. This was done by proof of his own declarations, made in reference to those demands and other business transactions. It is insisted, that

these declarations were not admissible. We think the court committed no error in admitting them in evidence. It was clearly competent to prove in that way that John Gates was without money. And that fact had a bearing on the question of the guilt of the prisoner. The fact that John Gates had no money before the murder, and that he afterwards had money resembling that belonging to Liley, taken in connection with the circumstances of his writing the letter to Hilton, tended to show either that he received the money from the prisoner, or that they both participated in the commission of the crime. In either point of view, the evidence was admissible.

Some exceptions were taken to the refusal of the court to give certain instructions, but they present substantially the same questions that have already been discussed.

The judgment must be affirmed.

*Judgment affirmed.*