Docket No. 90480–Agenda
10–November 2001.
THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
 MELVIN TISDEL, Appellee.
 Opinion filed March 15, 2002.
 JUSTICE THOMAS delivered the opinion of the court:
 Following a jury trial, defendant, Melvin Tisdel, was convicted
of the first degree murder of Julio Lagunas. Defendant was sentenced
to 35 years’ imprisonment. The appellate court reversed defendant’s
conviction on the ground that the trial court should not have allowed
the State’s witnesses to testify concerning a nonidentification
lineup. 316 Ill. App. 3d 1143. The appellate court concluded that the
error was not harmless, because the evidence was closely balanced and
it was possible that the jury would have reached a different verdict
had the nonidentification testimony been excluded. This court
thereafter granted the State’s petition for leave to appeal. 177 Ill.
2d R. 315.

 BACKGROUND
 Defendant’s conviction was based upon the drive-by shooting of
Julio Lagunas on September 3, 1995. The facts detailing the crime and
the investigation leading to defendant’s arrest are set out in the
appellate court’s opinion (316 Ill. App. 3d 1143), and will be recited
here only as necessary to an understanding of the issue before this
court.
 On September 3, 1995, around 5:50 p.m., 18-year-old Julio
Lagunas was shot to death as he stood on the corner of Clark Street
and Jarvis Avenue in Chicago. Lagunas was shot by the passenger in a
passing black IROC Chevrolet Camaro. Although the driver of the Camaro
was identified and arrested shortly after the shooting, defendant was
not identified until almost one year later, in lineups conducted on
August 16, 1996, and September 12, 1997. Ultimately there were four
eyewitnesses that identified defendant as the shooter. Those
eyewitnesses included Gerardo Quiroz (Gerardo), Osvaldo Quiroz
(Osvaldo), Francisco Curonel (Francisco) and Jose Ramos (Jose).
 Gerardo testified at trial that on September 3, 1995, he,
Osvaldo and Jose were standing on the sidewalk outside the Clark Mall
in Chicago when he saw a black IROC Camaro with tinted windows, chrome
wheels and two tailpipes pull into the entrance to the mall parking
lot. The two men inside the car tried to talk to some girls going into
the mall, then drove toward the back of the mall parking lot, turned
right, and came through the middle of the lot. The Camaro then stopped
on the sidewalk before turning left onto Clark Street. The passenger
side of the car was facing Gerardo and the others, and the window was
down. At that point, the passenger pulled out a gun and pointed it at
Gerardo, Osvaldo and Jose. The car then drove north onto Clark Street.
 As the car drove along Clark Street, Gerardo saw Francisco
across the street from the Clark Mall, in Touhy Park. Gerardo saw the
passenger take out his gun and point it at Francisco. Francisco tried
to hit the car with something, then ducked. The car kept driving north
on Clark Street, then stopped as Julio Lagunas and Ulysses Renteria
were trying to cross Clark Street at the intersection of Jarvis and
Rogers Avenue. Gerardo again saw a hand holding a gun sticking out of
the passenger side window pointing at Julio and Ulysses. Gerardo heard
a gunshot as the car sped up and “took off.” Gerardo ran toward Julio,
who was lying on the ground bleeding. Osvaldo went home before the
police arrived.
 Gerardo described the passenger to the police as a skinny 23-
year-old black male with a light complexion and braided hair with
beads on the ends. The police took Gerardo, Jose, Francisco and
Ulysses (who was deceased at the time of trial) to the police station.
At the station, Gerardo recognized the black Camaro involved in the
shooting. Gerardo also looked at a lineup that day but did not
identify anyone. Approximately one week later, Gerardo told the
officers that his brother Osvaldo also had witnessed the shooting.
Almost one year later, on August 16, 1996, Gerardo, Osvaldo and
Francisco separately viewed a lineup at the police station. Gerardo
identified defendant in the lineup as the passenger in the Camaro.
Gerardo identified defendant in court as the person he recognized as
the shooter in the August 16, 1996, lineup. A photo of the August 16,
1996, lineup reveals that defendant had a braided hairstyle at the
time of the lineup.
 Osvaldo’s testimony concerning the events leading to the
shooting was similar to Gerardo’s testimony. Osvaldo described the
passenger as a dark male who had long braided hair with black, white
and blue beads at the ends. Osvaldo testified that he did not talk to
the police on the day of the shooting because his mother came to the
scene and told him to go home because he was too young to get
involved. The next day, Osvaldo and his mother were walking on Ashland
Avenue in Chicago when Osvaldo saw a green Nissan Maxima drive past.
Osvaldo recognized defendant as a passenger in the Maxima. Defendant
stared at Osvaldo for awhile and Osvaldo stared back.
 On September 12, 1995, Osvaldo spoke with police officers for
the first time. On that date, Osvaldo viewed five photographs at the
police station and identified the driver of the car in one of the
photographs. Osvaldo told the officers he was pretty certain the
person in the picture was the driver, but said he would have to see
him in person. On September 21, 1995, Osvaldo went back to the police
station to view a lineup. Osvaldo identified the driver of the car in
the lineup. Although another individual in the lineup had his hair in
braids, Osvaldo did not identify him as the shooter. On August 16,
1996, Osvaldo viewed a lineup and identified defendant as the shooter.
Osvaldo also identified defendant in court as the shooter.
 Francisco also testified at trial that he saw the car turn into
the Clark Mall, then later pull out from the middle of the parking lot
and turn north on Clark Street. Francisco heard someone yell “watch
out with the car, they’ve got a gun.” The passenger in the car threw
his arm out and pointed a gun at Francisco. Francisco then threw a bag
at the car then fell to the ground. Francisco started running toward
Julio and Ulysses. The car slowed down when the occupants saw Julio
and Ulysses. The passenger put his arm out the window with the gun in
his hand. Francisco heard a shot and the car sped off. When Francisco
reached Julio, Julio was lying on the ground bleeding.
 That same day, Francisco went to the police station and
identified a car as the Camaro involved in the shooting. Francisco
also viewed a lineup around 1 a.m. and identified the driver of the
car. Francisco described the passenger as a black male, 25 to 28 years
old, with a skinny face and braided hair close to his head. On August
16, 1996, Francisco viewed another lineup and identified defendant as
the shooter. Francisco identified defendant in court as the person he
picked out of the lineup as the shooter.
 Jose testified that he was on a pay phone in front of the Clark
Mall with Gerardo and Osvaldo standing nearby when a black IROC Camaro
stopped in front of him on the sidewalk. The windows of the Camaro
were down, so that Jose could see two males in the car. The passenger
was smoking marijuana and there was a gun on the seat between the
driver and passenger. The passenger grabbed the gun and put it between
his legs. Jose identified defendant in court as the passenger. The car
went around the mall parking lot, then came out the middle. Before the
car turned left onto Clark Street, the passenger pointed a gun at
Jose, Gerardo and Osvaldo. Jose described the passenger as 21 to 25
years old, dark skinned, with braids.
 Jose’s description of the events leading to the shooting
paralleled that of Gerardo, Osvaldo and Francisco. Jose also went to
the police station immediately after the shooting and identified the
Camaro used in the shooting. Jose viewed a lineup that night, but did
not identify anyone in the lineup. Jose viewed a second lineup on
September 12, 1997, approximately one month prior to trial. Jose
identified defendant in the lineup as the shooter. A photo of this
lineup reveals that defendant had a different hairstyle at this
lineup, with his hair short and not braided. On cross-examination,
Jose testified that he did not see any beads in the shooter’s hair on
September 3, 1995.
 As noted, following his conviction for first degree murder,
defendant appealed his conviction to the appellate court claiming,
inter alia, that he was deprived of a fair trial when the State’s
witnesses testified that they had viewed lineups containing persons
other than defendant and had made no identification. Defendant claimed
that the State was attempting to bolster its case with the
nonidentification testimony. Defendant conceded that he had not
objected to the testimony at trial or in his post-trial motion, but
asked the court to apply the plain error rule.
 The appellate court agreed that the issue should be considered
under the plain error rule. 316 Ill. App. 3d at 1154. Citing this
court’s opinion in People v. Hayes, 139 Ill. 2d 89 (1990), the
appellate court noted that a witness’ identification of a defendant
may not be bolstered by introducing evidence that the witness failed
to identify anyone else during pretrial identification procedures. 316
Ill. App. 3d at 1154. The appellate court held that the
nonidentification testimony should not have been allowed because it
was presented simply to corroborate the witnesses’ subsequent
identification of defendant. 316 Ill. App. 3d at 1154. The appellate
court also held that because it was possible that the jury might have
returned a different verdict had the nonidentification testimony been
excluded, the error in admitting the testimony required reversal of
defendant’s conviction. 316 Ill. App. 3d at 1154-55. One justice wrote
a special concurrence to express his “strong disagreement” with this
court’s position that nonidentification testimony is inadmissible. 316
Ill. App. 3d at 1158-59 (Quinn, P.J., specially concurring). This
court thereafter granted the State’s petition for leave to appeal that
decision. 177 Ill. 2d R. 315.

 ANALYSIS
 In People v. Hayes, 139 Ill. 2d 89, 138 (1990), this court found
error in the admission of witness testimony stating that the witnesses
had viewed pictures of persons other than defendant and had made no
identification. This court held that the testimony violated the
general rule that a witness may not testify in court as to statements
made out of court for the purpose of corroborating his trial testimony
concerning the same subject. Hayes, 139 Ill. 2d at 138.
 We recognized, however, that there were two exceptions to the
general rule. Hayes, 139 Ill. 2d at 138. One exception is where a
prior consistent statement is introduced to rebut a charge or an
inference that the witness is motivated to testify falsely or that his
in-court testimony is of recent fabrication. Hayes, 139 Ill. 2d at
138. That exception did not apply in Hayes because the defendant had
not expressly or impliedly charged that the State’s witnesses were
motivated to falsely identify him, but instead simply attempted to
show that the witnesses may have been mistaken in their identification
of him. Hayes, 139 Ill. 2d at 138.
 The second exception to the general rule is where the out-of-
court statement is one of identification. Hayes, 139 Ill. 2d at 138.
That exception did not apply because the witnesses’ out-of-court
statements were not statements of identification. Hayes, 139 Ill. 2d
at 138. Rather, the statements were that the witnesses did not
identify the defendant from police photo books and photo arrays.
Hayes, 139 Ill. 2d at 138. In fact, the State introduced the out-of-
court statements to bolster the reliability of the witnesses’
subsequent lineup and in-court identifications of the defendant.
Hayes, 139 Ill. 2d at 138-39. This court concluded that such evidence
was improperly introduced, although the evidence was not so
prejudicial as to deprive defendant of a fair trial. Hayes, 139 Ill.
2d at 139.
 In this case, the State asks this court to depart from the
precedent set forth in Hayes. The State argues that negative
identification testimony is both relevant and admissible. The State
observes that in Hayes, this court was not presented with evidence
that a witness had viewed photographs or multiple lineups containing
individuals similar in appearance to the defendant. Thus, the court
did not consider that a witness’ failure to identify individuals
similar to the defendant demonstrates the witness’ reliability and
also refutes the possibility that the prior pretrial identification
was based upon the suggestiveness of the identification procedure.
 Defendant responds that Hayes is controlling authority
concerning the use of pretrial nonidentification evidence. Defendant
further contends that neither of the exceptions to the prior
consistent statement rule apply, because there was no charge that the
witnesses in this case were fabricating their testimony, nor were the
statements of the witnesses statements of identification. Defendant
therefore maintains that this court must affirm the decision of the
appellate court.
 Upon review, we find this court’s determination in Hayes
concerning nonidentification testimony to be flawed. The Hayes court
acknowledged that there was an exception to the general rule where an
out-of-court statement is one of identification. Hayes, 139 Ill. 2d at
138. The court then held that the nonidentification testimony was not
admissible under this exception because the statements were not
statements of identification. Hayes, 139 Ill. 2d at 138. We believe
the Hayes court construed the term “statements of identification” too
narrowly.
 At the outset we note that nonidentification evidence is
inherent in most “statements of identification.” As Justice Quinn
observed in his special concurrence to the appellate court opinion in
this case, when identifying a defendant from a lineup or photo array,
a witness necessarily does not identify the remaining individuals in
the lineup or photo array. See 316 Ill. App. 3d at 1163 (Quinn, P.J.,
specially concurring). This type of nonidentification is crucial to
the accuracy of the witness’ identification because, in the typical
case, a witness is shown a group of similar looking individuals and
asked to pick out only the one who committed the crime. Consequently,
the fact that the witness did not pick the other individuals in the
lineup becomes as important as the fact that the witness did pick the
defendant. Given the crucial role that nonidentification plays with
regard to a lineup or photo array where a defendant is positively
identified, it follows that the same considerations apply with regard
to those lineups or photo arrays where a defendant is not identified.
Indeed, it is logical to presume that the more lineups and photo
arrays a witness views, the more likely that witness’ identification
is reliable and is not based upon suggestiveness.
 With the foregoing in mind, we find that the Hayes court erred
in limiting “statements of identification” to a witness’ actual
identification of a defendant. This interpretation mistakenly focuses
on the result rather than the process. As a consequence, a trier of
fact may be deprived of information necessary to an informed decision
concerning a witness’ reliability. In contrast, construing “statements
of identification” to include the entire identification process would
ensure that a trier of fact is fully informed concerning the
reliability of a witness’ identification, as well as the
suggestiveness or lack thereof in that identification.
 Justice Quinn, in his special concurrence, pointed out this
potential problem with limiting “statements of identification” to only
positive identifications. Justice Quinn noted that the court’s holding
would:
 “require the State on retrial to confine its evidence on the
 subject of identification of the defendant to the date of the
 first identification–one year (or two) after the shooting. What
 is the jury to make of this delay? The defense will attack the
 investigation and the State will be precluded from explaining
 what investigatory steps were taken from the time of the
 shooting to the first lineup identification.” 316 Ill. App. 3d
 at 1162 (Quinn, P.J., specially concurring).
 That the entire identification process includes both
identification and nonidentification evidence has been given tacit
approval by the United States Supreme Court. In Neil v. Biggers, 409
U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972), the Court held that
although a showup procedure was unnecessarily suggestive, there was no
substantial likelihood of misidentification requiring evidence of the
identification to be excluded. The Court noted various factors
weighing in favor of the admission of the identification. Among those
factors was that the victim had looked at numerous photographs,
lineups and showups in the seven-month time period between the crime
and her identification of the defendant as the perpetrator. Biggers,
409 U.S. at 201, 34 L. Ed. 2d at 412, 93 S. Ct. at 383. Specifically,
the Court stated that:
 “There was, to be sure, a lapse of seven months between
 the rape and the confrontation. This would be a seriously
 negative factor in most cases. Here, however, the testimony is
 undisputed that the victim made no previous identification at
 any of the showups, lineups, or photographic showings. Her
 record for reliability was thus a good one, as she had
 previously resisted whatever suggestiveness inheres in a
 showup.” (Emphasis added.) Biggers, 409 U.S. at 201, 34 L. Ed.
 2d at 412, 93 S. Ct. at 383.
 Obviously, the admissibility of nonidentification evidence is
limited by considerations of relevance. If nonidentification evidence
is not relevant, it should be excluded from evidence. For example,
evidence that a witness viewed a lineup containing red-haired, blue-
eyed men would not be relevant or admissible if the witness described
the perpetrator as a blond-haired, brown-eyed man. However, evidence
that a witness viewed a lineup containing individuals similar in
appearance to the defendant but did not identify anyone would be
relevant to the identification process.
 In this case, the trial court properly allowed the witnesses to
testify concerning the nonidentification lineups. As in Biggers, there
was a significant lapse of time between the shooting of Julio and the
witnesses’ identification of defendant. Consequently, the fact that
some of the witnesses had viewed prior lineups and did not identify
anyone was relevant in demonstrating the reliability of the subsequent
identifications. This is especially true with regard to the lineup
viewed by Osvaldo, which contained not only the driver of the Camaro,
but also an individual similar in appearance to defendant, including
defendant’s distinctive hairstyle–braids or cornrows.
 We further note that the gravamen of the defense was that the
witnesses were mistaken in their identification of defendant as the
shooter. Defense counsel extensively cross-examined the witnesses
concerning their ability to observe the shooter, their level of
attention to the occupants in the Camaro, and the almost one-year
length of time between the shooting and the lineup identification of
defendant. Under the circumstances, the process leading to the lineup
identification, including nonidentification lineups, was relevant to
the witnesses’ ultimate identification of defendant as the shooter.
 Because we find that this court in Hayes erred in finding that
nonidentification evidence was not admissible under the “statement of
identification” exception to the general rule, and therefore depart
from that holding, it follows that the appellate court in this case
erred in reversing defendant’s conviction based upon our holding in
Hayes. We therefore reverse the decision of the appellate court and
affirm defendant’s conviction and sentence.
 For the foregoing reasons, the judgment of the appellate court
is reversed, and the judgment of the circuit court is affirmed.

 Appellate court judgment reversed;
 circuit court judgment affirmed.

 JUSTICE McMORROW, dissenting:
 At issue in this appeal is whether the trial court erred in
allowing witnesses for the State in a murder prosecution to testify
concerning a nonidentification lineup. In answering this question in
the negative, the majority neither discusses nor makes citation to
this court’s decision in People v. Jones, 153 Ill. 2d 155 (1992), a
unanimous ruling less than 10 years old which addresses the precise
issue at bar, and which compels a result opposite to the majority’s
ruling. The majority also overrules, without cogent reason, this
court’s decision in People v. Hayes, 139 Ill. 2d 89 (1990). Because
the majority’s conclusion represents an unwarranted departure from
this court’s holdings in Jones and Hayes, I respectfully dissent.
 This appeal has its genesis in the conviction of defendant, by a
jury, of the first degree murder of Julio Lagunas, who was killed in a
drive-by shooting on September 3, 1995. During defendant’s trial, the
State called four eyewitnesses who identified defendant as the
passenger who shot Lagunas. Three of the four eyewitnesses stated that
they identified defendant as the gunman from a lineup conducted on
August 16, 1996, and the fourth eyewitness stated that he had picked
defendant out of a lineup on September 12, 1997. The State elicited
from all four witnesses that, prior to viewing the lineup from which
they identified defendant, they viewed another lineup (which did not
include defendant) from which they did not identify anyone as being
the gunman.
 On appeal, defendant argued that the trial court erred in
allowing the State to impermissibly bolster its case by introducing
the witnesses’ nonidentification testimony. According to defendant,
the State improperly relied upon the nonidentifications to show how
careful the witnesses were in their ultimate identification of
defendant. A majority of the appellate court panel agreed with the
defendant’s contentions. Relying upon this court’s 1990 decision in
Hayes, 139 Ill. 2d 89, the majority of the panel concluded that the
State may not bolster a witness’ identification of a defendant by
introducing evidence that the witness failed to identify anyone else
during pretrial identification procedures. The appellate court
determined that the nonidentification testimony should not have been
allowed because “it was presented simply to corroborate the witnesses’
subsequent identification of defendant.” 316 Ill. App. 3d at 1154.
Furthermore, the panel determined that this error could not be
considered harmless, since the evidence in the case was closely
balanced. The appellate court majority noted that “none of the
eyewitnesses knew defendant or viewed him for a considerable length of
time,” that there was “no physical evidence linking defendant to the
crime,” that “defendant was not arrested near the scene,” and that
“[d]efendant did not confess.” 316 Ill. App. 3d at 1153-54. Further,
the appellate court majority observed that a “substantial amount of
time [had] elapsed between the offense and the lineup
identifications,” with three of the witnesses identifying defendant
almost a year after the shooting, and another witness identifying
defendant two years after the shooting. 316 Ill. App. 3d at 1154. The
appellate court majority concluded that, under these facts, it was
“quite possible that the jury would have returned a different verdict
had the nonidentification testimony been excluded.” 316 Ill. App. 3d
at 1154.
 The majority now reverses the judgment of the appellate court,
and holds that this court “erred” in its Hayes decision. For the
reasons fully set forth below, I disagree with the majority’s
conclusion.
 In People v. Hayes, 139 Ill. 2d 89 (1990), the defendant was
convicted of murder and armed robbery. On appeal, the defendant
alleged that the trial court committed reversible error when four
prosecution witnesses were allowed to testify that, prior to
identifying the defendant, they viewed photographs of individuals
other than the defendant and made no identification. Defendant argued
that such nonidentification evidence was “irrelevant and highly
prejudicial” because “testimony that the witnesses viewed pictures of
persons other than the defendant and made no identification was no
more relevant than evidence that the witnesses did not view the
defendant at an athletic event or shopping mall.” Hayes, 139 Ill. 2d
at 137. This court unanimously agreed with the defendant’s assertion
that the nonidentification testimony should not have been admitted,
holding that it “violated the general rule that a witness, although
present in court and subject to cross-examination, may not testify as
to statements he made out of court for the purpose of corroborating
his testimony given at trial relative to the same subject.” Hayes, 139
Ill. 2d at 138. Indeed, the general rule of evidence cited in Hayes
barring, as hearsay, the admission of prior out-of-court statements to
bolster in-court testimony on the same subject has long been a part of
this court’s jurisprudence. See, e.g., People v. Clark, 52 Ill. 2d
374, 389 (1972); People v. Wesley, 18 Ill. 2d 138, 153-54 (1959); Lyon
v. Oliver, 316 Ill. 292, 303 (1925); People v. Fox, 269 Ill. 300, 323
(1915); Gates v. People, 14 Ill. 433, 438 (1853). Hayes, however, was
the first case in which this court applied this well-settled rule of
evidence to bar a witness’ nonidentification testimony.
 As is noted in Hayes, this court has traditionally recognized
two exceptions to the general rule that a witness may not testify as
to out-of-court statements for the purpose of bolstering in-court
testimony relative to the same subject. First, it is well settled that
a prior consistent statement is not barred by the hearsay rule, and is
therefore admissible, if the statement is offered to rebut a charge or
inference that the witness is motivated to testify falsely or that the
witness’ in-court testimony is of recent fabrication. Hayes, 139 Ill.
2d at 138, citing Clark, 52 Ill. 2d at 388-90; see also Lyon, 316 Ill.
at 303; Gates, 14 Ill. at 438. The Hayes court determined that this
exception did not apply to the facts before it because the defendant
had simply attempted to show that the witnesses may have mistakenly
identified him, and did not expressly or impliedly allege that the
State’s witnesses were motivated to falsely identify him. Hayes, 139
Ill. 2d at 138.
 Further, as Hayes made clear, it is well settled that the bar
against hearsay does not apply where a prior out-of-court statement is
one of identification. Accordingly, statements with respect to a prior
identification of the defendant are admissible. Hayes, 139 Ill. 2d at
138, citing People v. Rogers, 81 Ill. 2d 571, 578-79 (1980); see also
725 ILCS 5/115–12 (West 2000). The court in Hayes relied upon this
court’s prior decision in Rogers, wherein the rationale for this
exception was explained: “[B]y the time of trial, the witness’ mind
has become so conditioned that there is little likelihood that he
would not identify the person [defendant] in court *** ‘*** therefore,
it is entirely proper *** to prove that at a former time, when the
suggestions of others could not have intervened to create a fancied
recognition in the witness’ mind, he recognized and declared the
present accused to be the person.’ ” (Emphasis omitted.) Rogers, 81
Ill. 2d at 578-79, quoting 4 J. Wigmore, Evidence §1130, at 277
(Chadbourn rev. ed. 1972). The Hayes court determined that the
witnesses’ statements that they viewed photographs of persons other
than the defendant and made no identification were inadmissible under
the “identification” exception to the hearsay bar. The court held that
the statements at issue were not statements of identification; rather,
they were statements of nonidentification. Hayes, 139 Ill. 2d at 138.
 Accordingly, because the challenged testimony in Hayes did not
fall within either exception to the general rule barring admission of
prior consistent statements, this court held that the State
“improperly introduced these prior consistent statements to bolster
the reliability of the witnesses’ subsequent lineup and in-court
identifications of the defendant.” Hayes, 139 Ill. 2d at 138-39.
However, although the Hayes court determined that the
nonidentification evidence was improperly admitted, the court
concluded that, under the facts before it, the evidence was not so
prejudicial that it deprived the defendant of a fair trial, as there
was overwhelming evidence of the defendant’s guilt. Hayes, 139 Ill. 2d
at 139.
 According to the majority opinion in the matter at bar, the
“State asks this court to depart from the precedent set forth in Hayes
*** [because] in Hayes, this court was not presented with evidence
that a witness had viewed photographs or multiple lineups containing
individuals similar in appearance to the defendant.” Slip op. at 6.
The State therefore asserts, and the majority agrees, that this court
has not previously been afforded the opportunity to consider whether a
witness’ failure to identify individuals similar to defendant
demonstrates the witness’ reliability, and whether such
nonidentification refutes the possibility that the prior pretrial
identification was premised upon the suggestiveness of the
identification procedure. Slip op. at 6.
 Contrary to the argument advanced by the State and accepted by
the majority, this court has, in fact, previously considered and
rejected an argument identical to that raised by the State at bar. Two
years after this court decided Hayes, the principles of Hayes were
unanimously reaffirmed in People v. Jones, 153 Ill. 2d 155 (1992), a
decision which is conspicuously absent from the majority’s opinion. In
Jones, the defendant was found guilty of armed robbery and aggravated
unlawful restraint. On appeal, the defendant argued that the trial
court erred when it allowed the victim of the crime to testify
concerning her nonidentification of the defendant. Specifically, the
victim stated that prior to identifying the defendant in a lineup, she
had viewed another lineup (which did not include the defendant) and
failed to identify anyone. Relying upon the decision in Hayes, this
court determined in Jones that the trial court erred in allowing the
State to introduce evidence of the victim’s failure to identify the
defendant in a prior lineup. The Jones court explicitly rejected the
argument advanced by the State that the victim’s nonidentification
testimony “was necessary to counter the defense’s allegation that the
lineup was overly suggestive and that the identification was therefore
not trustworthy.” Jones, 153 Ill. 2d at 162. Significantly, this court
concluded that the State’s argument was “simply a fancy way to argue
that it was necessary to corroborate [the victim’s] testimony, which
is precisely what Hayes disallows.” Jones, 153 Ill. 2d at 162.
 Despite the fact that Jones previously presented this court with
the question of the admissibility of nonidentification evidence in the
context of multiple lineups, and despite the fact that this court in
Jones unanimously upheld the principles of Hayes and rejected
arguments substantially similar to those proffered by the State in the
case at bar, the majority nevertheless concludes that the argument now
advanced by the State has merit, and finds “this court’s determination
in Hayes concerning nonidentification testimony to be flawed.” Slip
op. at 6.
 Specifically, the majority holds that “this court in Hayes erred
in finding that nonidentification evidence was not admissible under
the ‘statement of identification’ exception to the general rule,”
causing the majority to “depart from that holding.” Slip op. at 9. In
arriving at this conclusion, the majority necessarily violates the
doctrine of stare decisis by omitting any discussion of, or citation
to, the controlling precedent of Jones. Indeed, the majority opinion
is notable for its complete silence with respect to the application of
the principle of stare decisis while overturning two recent and
unanimous decisions of this court. In addition, the majority fails to
make citation to any authority subsequent to Hayes and Jones which
would warrant or compel this court to stray from the principles of
stare decisis and reevaluate the well-settled evidentiary rules set
forth in those decisions.
 The doctrine of stare decisis “proceeds from the first principle
of justice, that, absent powerful countervailing considerations, like
cases ought to be decided alike.” 5 Am. Jur. 2d Appellate Review §599
(1995); see also Neff v. George, 364 Ill. 306, 308-09 (1936) (stare
decisis requires this court to follow and apply its own precedent and
not disturb settled points of law). The doctrine of stare decisis “is
the means by which courts ensure that the law will not merely change
erratically, but will develop in a principled and intelligible fashion
*** [apart from] the proclivities of individuals.” Chicago Bar Ass’n
v. Illinois State Board of Elections, 161 Ill. 2d 502, 510 (1994).
Indeed, prior to the majority’s opinion at bar, the law in this area
had in fact been developing in a “principled and intelligible
fashion,” as evidenced by our reaffirmation of Hayes in Jones, as well
as by our appellate court’s consistent application of the principles
of Hayes and Jones in determining that the State’s presentation of
negative identification evidence improperly bolsters a witness’
subsequent identification of a defendant and constitutes inadmissible
hearsay. See, e.g., People v. Jones, 293 Ill. App. 3d 119 (1997);
People v. Davis, 285 Ill. App. 3d 1039 (1996); People v. Biggers, 273
Ill. App. 3d 116 (1995); People v. Berry, 264 Ill. App. 3d 773 (1994);
People v. Berry, 241 Ill. App. 3d 993 (1993).
 It is well settled that prior precedent should be overturned
“only on the showing of good cause” (Heimgaertner v. Benjamin Electric
Manufacturing Co., 6 Ill. 2d 152, 167 (1955)), only where there is “
‘special justification’ ” for the departure (Chicago Bar Ass’n, 161
Ill. 2d at 510, quoting Arizona v. Rumsey, 467 U.S. 203, 212, 81 L.
Ed. 2d 164, 172, 104 S. Ct. 2305, 2311 (1984)), and only where the
reasons for departure are “compelling” (People v. Robinson, 187 Ill.
2d 461, 463-64 (1999)). Accordingly, this court has recognized that it
will not depart from precedent “ ‘merely because the court is of the
opinion that it might decide otherwise were the question a new one.’ ”
Robinson, 187 Ill. 2d at 464, quoting Maki v. Frelk, 40 Ill. 2d 193,
196-97 (1968); see also Prall v. Burckhartt, 299 Ill. 19, 41 (1921)
(it is “indispensable to the due administration of justice, especially
by a court of last resort, that a question once deliberately examined
and decided should be considered as settled and closed to further
argument, and the courts are slow to interfere with the principle
announced by the decision and it may be upheld even though they would
decide otherwise were the question a new one”). Indeed, “[i]f the law
were to change with each change in the makeup of the court, then the
concept that ours is a government of law and not of men would be
nothing more than a pious cliche.” People v. Lewis, 88 Ill. 2d 129,
167 (1981) (Ryan, J., concurring).
 The majority has advanced no principled basis, let alone “good
cause,” “compelling reason,” or “special justification,” for departing
from the holding in Hayes and Jones that statements of
nonidentification do not fall within the hearsay exception allowing
the admission of prior statements of identification. The majority,
tracking the analysis of Justice Quinn’s special concurrence below,
concludes that by excluding nonidentification testimony from the
“statements of identification” hearsay exception, the Hayes court
erred by construing that term “too narrowly.” Slip op. at 7.
Specifically, the majority holds that the decision in Hayes erred by
“limiting ‘statements of identification’ to a witness’ actual
identification of a defendant,” because, in the majority’s view, this
interpretation “mistakenly focuses on the result,” i.e., the ultimate
identification of the defendant, rather than on “the process” which
preceded the identification. According to the majority, “the process”
of identification includes the viewing of any prior lineups and/or
photo arrays where no identification of a suspect was made. Slip op.
at 7. It is the majority, however, which has erred in attempting to
unreasonably stretch the scope of the identification exception not
only beyond its plain language, but also beyond its intended purpose.
 Generally, the bar against admission of hearsay evidence
prevents a witness from testifying to statements he or she made out of
court for the purpose of corroborating that witness’ testimony given
at trial relative to the same subject. An exception to this general
rule of inadmissibility is made, however, when the extrajudicial
statements concern the witness’ pretrial identification of the
defendant. It is self-evident that a witness’ statement that he or she
was unable to identify a suspect is not a “statement of
identification.” In holding that the hearsay exception applies not
only to actual statements of identification, but also to the “process”
of identification encompassing lineups and photo arrays where the
witness is unable to make an identification, the majority has
performed a judicial sleight of hand. The majority has transformed a
witness’ statement that he or she did not identify a suspect during
prior lineups and/or photo arrays into a “statement of
identification.”
 In addition to unduly stretching the hearsay exception for
evidence of identification beyond its plain meaning, the majority also
expands the scope of this exception beyond its intended purpose. As
stated, this court in Rogers held that the general rule that a witness
may not testify as to statements he or she made out of court for the
purpose of corroborating in-court testimony relative to the same
subject does not apply to statements of identification. The Rogers
court explained that the justification for holding that evidence of a
witness’ pretrial identification of a defendant does not constitute
impermissible hearsay is premised on the notion that “ ‘it is entirely
proper *** to prove that at a former time, when the suggestions of
others could not have intervened to create a fancied recognition in
the witness’ mind, he recognized and declared the present accused to
be the person.’ ” (Emphasis omitted.) Rogers, 81 Ill. 2d at 579,
quoting 4 J. Wigmore, Evidence §1130, at 277 (Chadbourn rev. ed.
1972). Indeed, as the Rogers court observed, because “by the time of
trial, the witness’ mind has become so conditioned that there is
little likelihood that he would not identify the person [defendant] in
court,” it is entirely appropriate to admit evidence of the witness’
prior out of court identification of the defendant to corroborate the
witness’ in-court identification. Rogers, 81 Ill. 2d at 578-79.[1] The
rationale for admitting pretrial identification evidence has no
application to the admission of statements of nonidentification.
Accordingly, this court’s decisions in Hayes and Jones, exercising
sound reasoning and logic, were correct in holding that evidence of
nonidentification did not fall within the “statements of
identification” hearsay exception.
 Advancing past the plain language and purpose of the
identification exception to the hearsay rule, the majority concludes
that a witness’ pretrial identification of a defendant should be
viewed as a “process” rather than as a “result.” According to the
majority, the identification exception to the hearsay rule should
allow the admission of statements that the witness failed to make an
identification from a lineup or photo array, if those statements are
relevant to the ultimate out of court identification made by the
witness. This result is desirable, the majority reasons, because
allowing evidence with respect to a witness’ nonidentification of a
defendant would ensure that a trier of fact is not only “fully
informed concerning the reliability” of the witness’ out-of-court
identification, but is also fully informed with respect to the fact of
“the suggestiveness or lack thereof in that identification.” Slip op.
at 7. In other words, the majority has determined that hearsay
statements of nonidentification may be used to bolster the reliability
of another hearsay statement–the actual out-of-court identification of
the defendant. A close analysis of the majority’s reasoning confirms
that it does not provide a principled basis for reaching this result.
 First, the majority notes that “when identifying a defendant
from a lineup or photo array, a witness necessarily does not identify
the remaining individuals in the lineup or photo array.” Slip op. at
7. The majority finds that this nonidentification is “crucial to the
accuracy of the witness’ identification” because the fact that the
witness did not select other individuals in a lineup becomes as
important as the fact that the witness did select the defendant. Slip
op. at 7. The majority further submits that “it is logical to presume
that the more lineups and photo arrays a witness views, the more
likely that witness’ identification is reliable and is not based upon
suggestiveness.” Slip op. at 7.
 I disagree. Evidence that a witness failed to identify a suspect
prior to the identification of the defendant is nonprobative hearsay.
When assessing the reliability of an identification made during a
lineup or after viewing a photo array, the crucial question is whether
the witness accurately identified the defendant as the perpetrator of
the crime. The fact that the witness viewed several lineups or photo
arrays in which the witness did not identify the defendant says
nothing about the accuracy of the identification at issue. In
addition, what occurred during other pretrial identification
procedures reveals no information with respect to the influences which
may have been present on the witness at the time of the actual
identification of the defendant. For example, the nonidentification
evidence offers no information with respect to whether the witness’
actual identification of the defendant was animated by suggestive
practices on the part of the police, whether the witness’
identification was motivated by malice against the defendant, or
whether simple fatigue factored into the witness’ identification.
Finally, the admission of nonidentification evidence in the State’s
case in chief creates a problem of circular reasoning, as the only
means to measure the accuracy of the witness’ “nonidentification” is
the identification itself, the very fact at issue in the case.
 Although the majority also suggests that the introduction of
nonidentification evidence will assist the State in explaining delays
in identification, the nonidentification evidence does not mitigate
the fact that a specific amount of time has elapsed after the witness
observed the perpetrator of the crime and the time when the
identification of a defendant is ultimately made. Admission of
nonidentification evidence may have little, if any, effect in
countering the logical inference that an identification made one or
two years after the commission of a crime is to be viewed with a
degree of skepticism.
 The only citation to authority made by the majority in its
opinion in support of overruling Hayes and Jones is to the 1972
decision of the United States Supreme Court in Neil v. Biggers, 409
U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972). However, the High
Court’s decision in Biggers is inapposite to the matter at bar. At
issue in Biggers was whether the procedure leading to the victim’s
pretrial identification of the defendant was “ ‘so unnecessarily
suggestive and conducive to irreparable mistaken identification’ ”
that it violated the defendant’s right to due process, and thereby
rendered the identification inadmissible. Biggers, 409 U.S. at 196, 34
L. Ed. 2d at 409, 93 S. Ct. at 380, quoting Stovall v. Denno, 388 U.S.
293, 301-02, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, 1972 (1967). The
Justices held that in ruling upon a challenge to the type of procedure
used to secure a pretrial identification, a court must engage in a two-
part inquiry: first, whether the process was impermissibly suggestive;
and, second, assuming suggestion, whether under the totality of the
circumstances the identification was nevertheless reliable and,
therefore, admissible. Biggers, 409 U.S. at 199, 34 L. Ed. 2d at 411,
93 S. Ct. at 382.
 In Biggers, the victim had identified the defendant after the
police had conducted a “showup,” which consisted of two detectives
walking the defendant past the victim. Although the Court held that
the showup procedure was suggestive, it declined to hold that it
amounted to a per se violation of due process. The Court determined
that the pertinent question is whether, under the totality of the
circumstances, the victim’s identification of the defendant was
reliable even though the confrontation procedure was suggestive. The
Court then listed the factors to be considered in evaluating the
likelihood of misidentification, including the opportunity of the
witness to view the perpetrator at the time of the crime, the witness’
degree of attention, the accuracy of the witness’ prior description of
the perpetrator, the level of certainty demonstrated by the witness at
the confrontation, and the length of time between the crime and
confrontation. Biggers, 409 U.S. at 199-200, 34 L. Ed. 2d at 411, 93
S. Ct. at 382.
 Applying these factors to the case before it, the High Court
found that because there was no substantial likelihood that the victim
had misidentified the defendant, the victim’s pretrial identification
was properly admitted. In the course of their analysis, the Justices
observed that there was a seven-month lapse between the crime and the
showup, and that this passage of time “would be a seriously negative
factor in most cases.” The Court, however, noted that under the
totality of the circumstances, the victim made “no previous
identification,” that “she had previously resisted whatever
suggestiveness inheres in a showup,” and that her “record for
reliability was thus a good one.” Biggers, 409 U.S. at 201, 34 L. Ed.
2d at 412, 93 S. Ct. at 383.
 Perhaps recognizing that the Biggers decision is inapposite to
the matter before us, the majority acknowledges that Biggers provides
only “tacit” approval (slip op. at 8) for the majority’s conclusion
that nonidentification evidence is admissible under the identification
exception to the hearsay rule. As stated, the question addressed in
Biggers was whether the pretrial identification of the defendant was
so suggestive as to increase the likelihood of misidentification to
such a level that it would violate defendant’s right to due process
and thereby be inadmissible. The question of the admissibility of
nonidentification evidence was not raised in Biggers, and no mention
of “nonidentification” was made when the Court set forth the specific
factors to be considered in evaluating the admissibility of the
pretrial identification. In sum, Biggers neither holds nor suggests
that nonidentification evidence is admissible under the “statements of
identification” exception to the hearsay rule. As a final point, I
further note that the Biggers decision had been established law for
almost two decades by the time this court decided Hayes in 1990.
 In sum, the majority has advanced no principled basis for
overruling this court’s unanimous and well-reasoned decisions in
Jones, a ruling which the majority neither cites nor discusses in its
opinion, and in Hayes. In an effort to achieve a desired result, the
majority has unreasonably stretched the identification exception to
the hearsay bar to hold that statements of nonidentification also
constitute “statements of identification.” The exception for
“statements of identification” means just that–the plain language and
purpose of the exception requires that the statement be of
“identification,” and not the opposite. Accordingly, I respectfully
dissent.

 JUSTICES FREEMAN and KILBRIDE join in this dissent.
-----------------------

 1In response to this court’s decision in Rogers, the Illinois
General Assembly enacted Public Act 83–367 (Pub. Act 83–367, eff.
January 1, 1984), which added section 115–12 to the Code of Criminal
Procedure of 1963 (725 ILCS 5/115–12 (West 2000)). Section 115–12
codified our ruling in Rogers by creating a statutory exception to the
hearsay rule that allows for the admissibility of prior identification
evidence. The statute’s mandate that the statement must be “one of
identification of a person made after perceiving him,” further
supports the argument that evidence of nonidentification does not fall
within this hearsay exception.